**CITY OF FORT WAYNE, Indiana**
**Appellant–Defendant,**

v.

**Richard D. MOORE, Eleanor Moore and**
**T–G, Inc. Appellees–Plaintiffs.**

No. 02A03–9806–CV–290.

Court of Appeals of Indiana.

March 10, 1999.

J. Timothy McAulay, Fort Wayne, Indiana, Attorney for Appellant.

John B. Powell, Edward E. Beck, Paul R. Sturm, Shambaugh, Kast, Beck & Williams, Fort Wayne, Indiana, Attorneys for Appellees.

## OPINION

BAKER, Judge

Appellant–Defendant, the City of Fort Wayne (the City), appeals a jury verdict in favor of appellees-plaintiffs Richard D. Moore and Eleanor Moore (collectively, the Moores), claiming that the trial court erred in denying its motion for judgment on the evidence. Specifically, the City contends, *inter alia*, that the evidence presented at trial failed to support the Moores' claims that it could be liable for the negligent hiring and negligent retention of a police officer when it was established that the officer acted outside the scope of employment when he committed a battery upon Richard.

Additionally, the Moores assert on cross-appeal that the trial court erroneously apportioned the amount of the damage award between the City and the third-party tort-feasor, and that it improperly reduced the amount of punitive damages that the jury had awarded.

## *FACTS*

The facts most favorable to the verdict are that the City was found liable for the negligent hiring and retention[1] of police officer Stanley Stanford, one of its former police officers. On August 16, 1994, Moore, an employee of T–G Inc. (T–G), was operating one of T–G's trucks. While driving outside the City's corporate limits, Stanford approached Moore's vehicle and passed it on the berm. Stanford abruptly pulled in front of the truck and came to an immediate stop which caused Moore to stop the truck. Thereafter, Stanford exited his vehicle and approached Moore. When Moore refused to get out of the truck, Stanford identified himself as "an officer." Record at 216. An altercation ensued where Stanford struck Moore in the chest, placed him in an arm bar, kicked him and caused Moore to fall to the ground. Moore eventually returned to his truck, whereupon Stanford slammed the door shut, striking Moore's shoulder. Stanford commented to passers-by that he was in the process of making an arrest. R. at 221. At the time of the incident, Stanford was off-duty, driving his personal vehicle and was not wearing a police uniform or any other apparel that might alert a citizen that Stanford was a police officer. During the altercation, Stanford never displayed a badge, did not mention the City of Fort Wayne, did not handcuff Moore and never informed Moore that he was under arrest.

The evidence established that Stanford first became a member of the Fort Wayne Police Department on January 4, 1993. Prior to hiring Stanford, the City had administered a standard "routine" MMPI test to him. R. at 309, 312. The results revealed that Stanford "could be overly aggressive at times," and the examiner recommended that Stanford's prior work history "should be scrutinized" before any hiring decision was made. R. at 317. The report also expressed concerns about Stanford's aggressive tenden-

---

1. We recently re-affirmed the recognition of a cause of action for negligent hiring and retention in *Grzan v. Charter Hosp.*, 702 N.E.2d 786, 793 (Ind.Ct.App.1998).

cies and his potential to be "hyper-vigilant." R. at 315–16. This pre-employment psychological evaluation was not shared with members of the City's Board of Safety (Safety Board), which was the entity charged with appointing City police officers. R. at 689.

Prior to becoming a member of the Fort Wayne Police Department, Stanford had been a probationary police officer in Dallas, Texas. During his employment with that police department, Stanford was involved in a number of off-duty incidents where he displayed aggressive behavior toward others. Several memoranda generated by members of the Dallas Police Department indicated that Stanford demonstrated an "inability to control his temper." R. at 414. As a result, Stanford was terminated from that department following the probationary period. R. at 244. Like the pre-employment psychological profile, Stanford's discharge from the Dallas Police Department had not been communicated to the Safety Board. R. at 445, 694–95.

Stanford had also been a police officer in Landcaster, Texas. During the course of his employment there, Stanford had been found guilty of several charges by that police department's Disciplinary Board in July of 1989. Those charges included a violation of department policy against "willfully mistreating or using unnecessary violence toward another." R. at 430. As a result of these incidents, the Landcaster Police Department suspended Stanford for 10 days.

Approximately one month after Stanford commenced employment with the Fort Wayne Police Department's narcotics division, complaints were made by fellow officers regarding Stanford's loud and aggressive behavior, along with his negative attitude toward the public. As a result of these complaints, Stanford was eventually transferred from that division. Stanford was also the subject of numerous citizen complaints regarding his "out of control, unprofessional and racially charged behavior" while employed with the Fort Wayne police department. R. at 368–407, 498.

As a result of the August, 1994 incident, the Moores and T–G filed a complaint on May 31, 1995, against the City and Stanford, seeking damages for battery. Eleanor Moore also sought damages for loss of consortium. In another count of the complaint, the Moores and T–G requested damages from the City alleging the negligent hiring, retention and training of Stanford. T–G also sought damages for the loss of Richard's services as a result of the injuries he sustained in the altercation. Stanford was charged with, and ultimately convicted of, battery as a result of the incident. Thereafter, he was discharged from the police department.

On November 7, 1997, the trial court granted summary judgment for the City with respect to the Moores' claim of negligent training, but determined that genuine issues of material fact remained with respect to the other counts set forth in the complaint. A jury trial commenced on February 17, 1998. At the conclusion of the Moores' case-in-chief, the City moved for judgment on the evidence. The trial court granted the motion as to T–G's claim for the loss of Richard's services and on the Moores' claim that the City could be liable on an "apparent authority" basis, but denied the motion in all other respects and permitted the case to proceed.

At the conclusion of the trial on February 20, 1998, the jury returned a verdict in favor of Richard Moore against Stanford, awarding him $175,000 in compensatory damages. The jury also awarded the sum of $80,765 to Richard against the City. In addition, the jury awarded Richard $250,000 in punitive damages, and $25,000 was awarded to Eleanor. Finally, the jury awarded $8,076.70 to Eleanor against the City. R. at 197. Thereafter, on March 4, 1998, the trial court made the following entry with respect to the damage award:

> The court now finding the verdicts in this cause to be the true verdicts of the jury, judgment is now ENTERED on the jury's verdicts in this cause, as limited by *I.C.* § 34–4–34–5, for Plaintiff Richard D. Moore and against Defendant Stanley W. Stanford in the amount of $175,000.00 actual damages and $50,000.00 punitive damages; for Plaintiff Eleanor Moore and against Defendant Stanley W. Stanford in the amount of zero actual damages and

zero punitive damages; for Plaintiff Richard D. Moore and against the Defendant City of Fort Wayne, Indiana in the amount of $80,765.00; and for Plaintiff Eleanor Moore and against the Defendant city of Fort Wayne, Indiana in the amount of $8,076.70. . . .

R. at 197. The City now appeals the denial of its motion for judgment on the evidence and the Moores' cross-appeal with respect to the award of damages.

## DISCUSSION AND DECISION

### I. Standard Of Review

■■■ We initially note that when this court reviews a trial court's ruling on a motion for judgment on the evidence, we apply the same standard as the trial court, considering only the evidence and reasonable inferences most favorable to the nonmoving party. *Young v. Butts,* 685 N.E.2d 147, 149 (Ind.Ct. App.1997). Judgment on the evidence is appropriate only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. *Id.* A judgment on the evidence should be entered only if the evidence points unerringly to a conclusion not reached by the jury. *Pacific Employer's Ins. Co. v. Austgen's Elec., Inc.,* 661 N.E.2d 1227, 1229 (Ind. Ct.App.1996), *trans. denied.*

### II. Scope Of Employment

■■ While the City raises a number of alleged errors, we need only address one which is dispositive. Specifically, the City asserts that the trial court erred in denying its motion for judgment on the evidence because it was undisputed that the encounter between Stanford and Moore occurred at a time when Stanford was not acting within the course and scope of his employment as a police officer. As a result, the City maintains that it cannot be liable under the theory of respondeat superior because, to hold otherwise, would "expand the tort of negligent hiring and retention beyond its current parameters." Appellant's Brief at 20.

■■■ We begin our discussion with the familiar and well-established maxims involving the imposition of vicarious liability. Under the doctrine of respondeat superior, an employer is liable for the acts of its employees which were committed within the course and scope of their employment. *Stropes v. Heritage House Childrens Center,* 547 N.E.2d 244, 247 (Ind.1989); *see also Grzan v. Charter Hosp.,* 702 N.E.2d 786, 792 (Ind.Ct. App.1998). An employee is acting within the scope of his employment when he is acting, at least in part, to further the interests of his employer. *Konkle v. Henson,* 672 N.E.2d 450, 456 (Ind.Ct.App.1996). Where an employee acts partially in self-interest but is still "partially serving his employer's interests," liability will attach. *Id.* However, simply because an act could not have occurred without access to the employer's facilities does not bring it within the scope of employment. *Id.* at 457.

■■■ We also note that while our courts have determined that an employer can be vicariously liable for the criminal acts of an employee, the test is whether the employee's actions were at least for a time authorized by his employer. *Stropes,* 547 N.E.2d at 250. If it is determined that none of the employee's acts were authorized, there is no respondeat superior liability. *Id.* Moreover, acts for which the employer is not responsible are those done "on the employee's own initiative, [citations omitted] with no intention to perform it as part of or incident to the service for which he is employed." *Id.* at 247. If some of the employee's actions were authorized, the question of whether the unauthorized acts were within the scope of employment is one for the jury. *Konkle,* 672 N.E.2d at 457. However, if none of the employee's acts were authorized, the matter is a question of law. *Id.*

Here, the Moores rely upon *Stropes,* where our supreme court determined that an employer-nursing home could be vicariously liable for the sexual assault of a mentally retarded resident because the employee, an aide at the nursing home, began the encounter by performing an authorized act which furthered his employer's business. Specifically, the facts in *Stropes* revealed that the nurse's aide began to bathe the victim and change his bedding which were acts that he was authorized to perform. *Stropes,* 547

N.E.2d at 249. Thereafter, he proceeded to sexually molest the victim, an act not authorized by his employer. The *Stropes* court noted that the unauthorized acts were not drastically different from the authorized acts, inasmuch as both involved touching the patient's unclothed body. As a result, our supreme court determined that because both authorized and unauthorized acts were at issue and were of similar character, there was a question of fact for the jury and summary judgment in favor of the nursing home-employer was not proper. *Id.* at 250.

Unlike *Stropes,* there is no evidence here that any of Stanford's acts were those authorized by the City. In other words, none of Stanford's actions could be said to have served or furthered a purpose of the City. The uncontroverted evidence demonstrated that Fort Wayne police officers were not authorized to make traffic stops outside the City's corporate boundaries, out-of-uniform, or in an unmarked police car. R. at 846–47. Moreover, such unauthorized stops were a cause for disciplinary action. R. at 846–47. We also note that unlike the circumstances in *Stropes,* the evidence here fails to demonstrate that Stanford had access to Moore because of his position as a police officer. Thus, we cannot say that Stanford began performing any authorized act which may have "melted" or "ripened" into some unauthorized act, so as to hold the City vicariously liable.

Finally, we note that this case is more akin to the circumstances presented in *Konkle,* where this court determined that a church was not liable for the sexual misconduct of its minister, because the acts of molestation perpetrated by the minister were not those authorized by the church. We noted that the minister was not engaged in any teaching or in any other pastoral acts when the sexual misconduct was committed and concluded that liability could not attach even though some of the acts took place in the church building. *Id.* at 457. As a result, we concluded that the entry of summary judgment in favor of the Church on the issue of respon-

deat superior liability was proper. *Id.; see also Eagle Mach. Co. v. American Dist. Tel. Co.,* 127 Ind.App. 403, 140 N.E.2d 756 (1957), *trans. denied* (no vicarious liability of employer when security company employees stole items from a repair shop because the evidence demonstrated that they were not authorized to touch or move store inventory when responding to an alarm).

As in *Konkle,* the evidence presented here does not support an inference that Stanford acted to any appreciable extent to further the City's interests so as to bring his acts within the scope of employment. Rather, it is apparent that Stanford's conduct was sufficiently divorced in time, place and purpose from his employment duties so as not to impose liability upon the City. As a result, the trial court erred in denying the City's motion for judgment on the evidence.

Judgment reversed.[2]

GARRARD, J., concurs.

ROBB, J., dissents with opinion.

ROBB, Judge, dissenting

In determining that the trial court erred in denying the City's motion for judgment on the evidence, the majority concludes that Stanford was not acting within the scope of his employment with the City when he assaulted Moore. I believe that the majority has applied the "scope of employment" test too narrowly to the facts of this case, and therefore, I respectfully dissent.

An employer is vicariously liable for the wrongful acts of its employees committed within the scope of their employment. *Warner Trucking, Inc. v. Carolina Casualty Ins. Co.,* 686 N.E.2d 102, 105 (Ind.1997). As explained by our supreme court:

Acts for which the employer is not responsible are those done 'on the employee's own initiative with no intention to perform it as part of or incident to the service for which he is employed.' However, an employee's wrongful act may still fall within the scope of his employment if his purpose

---

**2.** In light of our disposition of the issues set forth above, we need not address the Moores' claim on cross-appeal with respect to the damage award.

was, to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself.

*Stropes v. Heritage House Childrens Ctr.,* 547 N.E.2d 244, 247 (Ind.1989) (citations omitted).

In *Stropes,* our supreme court held that entry of summary judgment on a claim of respondeat superior in favor of a children's center and against a patient who had been sexually assaulted by an employee of the center was in error, as the "nature of the acts were, at the very least, sufficiently associated with [the employee's] authorized duties to escape dismissal on summary judgment." *Id.* at 250. The court stated:

A jury presented with the facts of this case might find that [the employee] acted to an appreciable extent to further his master's business, that his actions were, "at least for a time, authorized by his employer, related to the service for which he was employed, and motivated to an extent by [his employer's] interests," and that, therefore, his wrongful acts fell within the scope of his employment and [the employer] should be accountable. Conversely, a jury might find that [the employee's] acts were so "divorced in time, place and purpose" from his employment duties as to preclude the imposition of liability on his employer.

*Id.*

The majority correctly notes that if any of the employee's actions were authorized by his employer, the question of whether the unauthorized acts were within the scope of employment is one for the jury, but if none of the employee's acts were authorized, then the matter is a question of law. Op. at 607, citing *Konkle v. Henson,* 672 N.E.2d 450, 457 (Ind.Ct.App.1996). However, I believe the majority incorrectly proceeds to determine as a matter of law that none of Stanford's actions were authorized by the City.

In an attempt to distinguish *Stropes,* the majority states that "there is *no* evidence that *any* of Stanford's acts were those authorized by the City." Op. at 608 (emphasis added). The majority relies on evidence that Fort Wayne police officers were not autho-

rized to make traffic stops outside the City's corporate boundaries, out-of-uniform, or in an unmarked car, and that such stops were a cause for disciplinary action. I agree that the evidence showed that the City's policy was that its officers should not make such stops. However, the fact that Stanford's stop of Moore may not have been within the City's rules, or even within the dictates of the statute governing traffic stops by police officers who are out of uniform or driving unmarked cars, *see* Ind.Code § 9–30–2–2, does not necessarily take his conduct outside the scope of his employment. In *Warner Trucking,* a truck driver was apparently en route from his employer's premises to a gas station the night before he was scheduled to make a delivery when the semi-trailer tractor he was driving collided with another vehicle. The employee had consumed several alcoholic beverages that evening, despite company rules which prohibited an employee from driving a company vehicle if he had consumed alcohol that day. The motorists with whom the trucker collided sued the company on a theory of respondeat superior. The company moved for summary judgment, contending that its no-drinking policy established as a matter of law that the trucker was not authorized to drive at the time of the accident and was therefore not acting in the scope of his employment. The trial court denied the motion, and our supreme court affirmed, stating that "[e]ven though an employee violates the employer's rules, orders, or instructions, or engages in expressly forbidden actions, an employer may be held accountable for the wrongful act if the employee was acting within the scope of employment." 686 N.E.2d at 105.

The fact of the matter is, Stanford felt he had the duty and the authority to stop Moore's vehicle and investigate what he alleged to be an incident of reckless driving because the City had clothed him with the authority of a police officer. Whether the stop was a valid stop for purposes of our criminal law or for purposes of department discipline is not relevant to the inquiry before us. Making a traffic stop is the sort of conduct engaged in every day by police officers. It is the sort of conduct reserved by

the citizenry almost exclusively for police officers. An ordinary citizen on the roadway who observes a reckless driver may be frustrated, angry or fearful, and may even alert the authorities, but would not be likely to feel free to stop the vehicle, despite provisions in our law for citizen's arrests. *See* Ind.Code § 35–33–1–4.

Moreover, Moore testified that he did not feel he could resist the attack or defend himself due to Stanford's identification of himself as an officer for fear of criminal repercussions. R. 758–60. In this regard, we note that in a case concerning a store customer who resisted a store security guard who accused her of shoplifting, the fact that the guard also happened to be an off-duty, out-of-uniform police officer resulted in a charge against the customer of battery on a law enforcement officer. *Tapp v. State*, 406 N.E.2d 296, 297 (Ind.Ct.App.1980). In affirming the conviction, this court stated that it agreed with a line of cases from other jurisdictions that "it is the *nature of the acts performed* and not whether the officer is on or off duty, in or out of uniform, which determines whether the officer is engaged in the performance of his official duties." *Id.* at 302 (emphasis added). Had Moore resisted in any way, causing any injury, however insignificant, to Stanford, I have little doubt that Moore could have and would have been charged, as the defendant in *Tapp* was, with battery on a law enforcement officer because Stanford was performing an act in the nature of a police officer at the time, an incongruous result.

The majority further attempts to distinguish this case from *Stropes* in that the "evidence here fails to demonstrate that Stanford had access to Moore because of his position as a police officer." Op. at 608. However, I believe the evidence demonstrates precisely that: Moore testified that he only exited his truck, and thereby subjected himself to Stanford's physical attack, because Stanford identified himself as an officer. R. 216–17, 229. Stanford himself, both in his testimony and in his written "Miscellaneous Incident Report," stated that he felt it was his duty as a sworn officer to investigate Moore's alleged reckless driving. R. 270, Exhibit 4, R. 282. It was Stanford's position as a police officer with the City which led him to believe he could stop Moore, and it was his identification of himself as an officer which led Moore to submit to Stanford's requests that he exit his vehicle.

Finally, the majority likens the facts of this case to those of *Konkle*, in which this court determined that a church was not liable for the sexual misconduct of a minister because the minister was not engaged in any pastoral acts when the sexual misconduct occurred. However, I believe that Stanford was engaged in the acts of a police officer when he stopped Moore. The subsequent attack on Moore arose out of and was incident to Stanford's exercise of his police authority in stopping the vehicle. I fail to see how Stanford's conduct could be considered "divorced ... from his employment duties." Op. at 608.

I believe that the majority has so narrowly construed the meaning of "scope of employment" that no misconduct by an employee would ever be attributed to the employer. Under the majority's reasoning, we would always find as a matter of law that the employer is not vicariously liable for the misconduct of its employee because no legitimate employer ever gives an employee instructions to commit misconduct. I cannot agree that the "scope of employment" prong of respondeat superior liability is so limiting.[3]

3. Although not discussed by the majority, the issue of foreseeability bolsters my opinion that the majority's scope of employment analysis is too limited under the circumstances of this case. The foreseeability of Stanford engaging in this type of misconduct was great, and even with that knowledge, the City turned its head to the consequences of Stanford's conduct. Prior to his employment with the City, Stanford had been discharged from the Dallas, Texas police department due to several documented incidents of "inability to maintain control of his temper," r. 46, and "difficulty maintaining his self control." R. 52. While employed by the Dallas Police Department, Stanford was involved in an off-duty incident which resulted in a charge of assault being filed against him, r. 63, and was the defendant in a civil lawsuit filed by an arrestee alleging that Stanford had used excessive force in effecting an arrest. R. 32–45. A pre-employment psychological evaluation conducted at the request of the City resulted in the caution that "one should consider further scrutinizing his

The supreme court stated in *Stropes* that "the nature of the wrongful act should be a *consideration* in the assessment of whether and to what extent" the employee's acts fall within the scope of employment, citing several cases from other jurisdictions which focus on "how the employment relates to the *context in which the commission of the wrongful act arose.*" 547 N.E.2d at 249 (emphasis added). Although attacking a motorist is not within the normal course of conduct for a police officer, Stanford's attack on Moore began in the context of a traffic stop. I would therefore hold that the trial court was correct in denying the City's motion for judgment on the evidence and allowing the case to proceed to the jury for the determination of whether Stanford's misconduct arose within the scope of his employment.[4]

work history before hiring." R. 28. After being hired by the City, Stanford was removed from the narcotics division after complaints from his fellow officers about his "loud and aggressive behavior." R. 30. He was the subject of at least three citizen complaints during his tenure with the City. R. 374, 387, 401. Despite these repeated incidents, the City chose to clothe Stanford with the authority of a police officer and put him in a position of public trust. This foreseeability, coupled with the context in which the attack on Moore arose, makes the majority's scope of employment analysis too restrictive.

4. The majority found the issue of scope of employment dispositive of this appeal. Under my resolution of the scope of employment issue, further discussion of the parties' issues would be necessary. However, because the majority has addressed only the scope of employment, I have limited my comments to that issue, as well.