**Shawn SPENCER and Ray Bridwell, individually and on behalf of a class of those similarly situated, Appellants–Plaintiffs,**

v.

**Catherine O'CONNOR, in her official capacity as the Executive Director of the Indiana Criminal Justice Institute, Appellee–Defendant.**

No. 49A02–9805–CV–466.

Court of Appeals of Indiana.

March 30, 1999.

Kenneth J. Falk, Indiana Civil Liberties Union, Indianapolis, Attorney For Appellants.

Jeffrey A. Modisett, Attorney General of Indiana, Geoffrey Slaughter, Special Counsel to the Attorney General, Cindy M. Lott, Chief Counsel, Special Services Division, Indianapolis, Attorneys for Appellee.

## OPINION

GARRARD, Judge

### Case Summary

This appeal concerns the constitutionality of Indiana's Sex Offender Registration statute (the "Act"). Shawn Spencer and Ray Bridwell (the "Appellants") are both convicted sex offenders who have been released from confinement and are now residing in Indiana. Spencer pled guilty to child molesting in 1991. Bridwell was convicted of three counts of child molesting in 1993. Both were imprisoned and both now have their names listed in Indiana's Sex Offender Registry (the "Registry").

The Appellants filed a lawsuit against Catherine O'Connor, in her official capacity as the director of Indiana's Criminal Justice Institute (the "Institute"). The lawsuit alleges that the Appellants' inclusion in the Registry violates the prohibition on *ex post facto* laws contained in Article I, Section 10 of the United States Constitution and Article I, Section 24 of the Indiana Constitution, since the Appellants committed their offenses prior to July 1, 1994, the effective date of the Act. The Appellants also challenge the Institute's method of distributing the Registry. The Appellants filed a motion for summary judgment and the State filed a cross-motion for summary judgment. The trial court entered summary judgment in favor of the State.

### Issues

I. Whether Indiana's Sex Offender Registry statute violates the prohibition on *ex post facto* laws contained in the federal Constitution and the Indiana Constitution to the extent that it allows the inclusion of persons who

committed their offenses prior to the Act's effective date.

II. Whether the Indiana Criminal Justice Institute's practice of distributing the Registry to any person requesting a copy violates Indiana law.

### Discussion and Decision

Indiana's Sex Offender Registration statute was enacted effective July 1, 1994. IND. CODE § 5–2–12–1, *et seq.* Like many states' sex offender registration laws,[1] Indiana's law provides for both registration and notification and applies to certain classes of sex offenders.[2] IND.CODE § 5–2–12–4. The registration component requires those offenders convicted after June 30, 1994 to register with local authorities in the communities in which they reside. The offender must provide local law enforcement officials with certain information including the offender's name, any aliases, date of birth, sex, race, height, weight, eye color, Social Security number, driver's license number, home address, a description of the offense, the date of conviction, and the sentence imposed. IND.CODE § 5–2–12–6. A sex offender released from custody must register within seven days of his release. IND.CODE § 5–2–12–5(a). If an offender moves, he must provide his new address to the authorities in the community where he last registered and he must register with the new community. IND.CODE §§ 5–2–12–8(a), 5–2–12–5(a). Knowingly or intentionally failing to register is a Class D felony. IND.CODE § 5–2–12–9. An offender's duty to register expires ten years after he has been released from prison or placed on probation or parole, whichever occurs last. IND.CODE § 5–2–12–5(b).

The notification component of the Act requires the Institute to maintain the Registry and distribute it to certain mandatory recipients. IND.CODE § 5–2–12–11. The Institute maintains the Registry along with the Family and Social Services Administration to ensure that it is distributed to organizations providing services to children, as required under statute. IND.CODE § 5–2–6–3(a)(10).[3] In addition to the specified entities receiving the Registry, the Institute will also distribute the Registry to any entity or individual who requests it. The only exception is that the Institute will not release the Registry to offenders currently in prison. The State is required to update the Registry every six months. IND.CODE § 5–2–12–10. The offender information is collected from various sources, including the Department of Correction, the State police, prosecuting attorneys, sheriffs, and probation officers. While the registration portion of the Act requires the offender to submit more extensive information, the Registry itself contains only the offender's name and aliases, the offender's Social Security number, the citation for the offense committed, the date of conviction, and sentence imposed. The Registry does not contain the offender's home address, however, it does list the county or city where the offender intends to live. Although the registration requirement imposed on offenders applies only to offenders convicted after June 30, 1994, the Registry itself may include all persons convicted of sex offenses regardless of the date of conviction. IND.CODE § 5–2–6–3(b).[4]

---

**1.** Currently, there are sex offender registration laws in every state. *State v. Myers,* 260 Kan. 669, 923 P.2d 1024, 1028 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997).

**2.** The sex offender registration statute applies to those who have been convicted of rape, criminal deviate conduct, child molesting, child exploitation, vicarious sexual gratification, child solicitation, child seduction, sexual conduct with a minor as a Class A or Class B felony, incest, or sexual battery. IND.CODE § 5–2–6–3(b)(1). It also applies to those convicted of kidnapping or criminal confinement if the victim was under eighteen (18) years of age. IND.CODE § 5–2–6–3(b)(2).

**3.** Specifically, the Institute is required to send a copy of the registry to all school corporations, all nonpublic schools, a state agency that licenses individuals who work with children, the state personnel department, in order to screen individuals who may work with children, all child care facilities licensed in Indiana, and other entities providing services children or requesting the registry. IND.CODE § 5–2–12–11.

**4.** The Indiana Code provides that:
(b) The registry established under subsection (a)(10) must include the names of all persons who:
(1) have been convicted in Indiana before or after June 30, 1998, of:

## I. Ex Post Facto Prohibition

 The Appellants argue that their inclusion in the Registry violates the *ex post facto* prohibition included in both the federal and Indiana Constitutions. The United States Constitution provides that "[n]o state shall ... pass any ... ex post facto Law." U.S. CONST. art. I, § 10. The Indiana Constitution provides that "[n]o ex post facto law ... shall ever be passed." IND. CONST. art. I, § 24. Both parties acknowledge, and we agree, that the *ex post facto* analysis under Indiana law is the same as under the federal Constitution. *See Crawford v. State*, 669 N.E.2d 141, 150 (Ind.1996); *see also State ex rel. Dorton v. Circuit Court of Elkhart County*, 274 Ind. 373, 412 N.E.2d 72 (1980).

 The Ex Post Facto Clause prohibits states from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 21 (1981). "[T]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some sort of 'disadvantage,' ... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *California Dep't. of Corrections v. Morales*, 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 1602 n. 3, 131 L.Ed.2d 588, 593 n. 3 (1995). In the present case, the Act does, in fact, apply retroactively to the Appellants; thus, the specific issue to be addressed is whether the registration and notification provisions inflict "punishment," in which event the Ex Post Facto Clause would prohibit their application.

### A. Definition of Punishment Under the Ex Post Facto Clause

Our courts have not previously established a clear test to determine what constitutes punishment under the Ex Post Facto Clause. Nor has the Supreme Court articulated a formula for identifying legislation that falls within constitutional *ex post facto* prohibition. *See Morales*, 514 U.S. at 505, 115 S.Ct. at 1603, 131 L.Ed.2d at 603. However, we note that, in *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the Supreme Court used the same test under the Double Jeopardy and Ex Post Facto Clauses, leading us to conclude that the test for punishment is the same for both clauses. Recently, in *State v. Hurst*, 688 N.E.2d 402 (Ind.1997), our supreme court discussed punishment in the context of the Double Jeopardy Clause.

In *Hurst*, the defendant Hurst was driving his car on a county road, failed to yield to an oncoming car at an intersection, and caused a deadly collision. *Hurst*, 688 N.E.2d at 403. Hurst was fined $61.50 for failing to yield the right-of-way, a Class C infraction, and paid the fine. *Id.* Later, the State charged Hurst with reckless homicide, a Class C felony. Hurst filed a motion to dismiss arguing that the State violated the Double Jeopardy Clause by prosecuting him for reckless homicide when he had already been fined for failure to yield the right-of-way, and the trial court granted Hurst's motion. *Id.* The State appealed and our supreme court reversed the trial court's decision. *Id.*

 In reversing, the court addressed the issue of whether the imposition of a fine was "punishment," thus implicating the Double Jeopardy Clause's prohibition on the subsequent prosecution. Adopting the "intents-effects" test articulated in the Supreme Court's *Hendricks* opinion and in *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), our supreme court stated that determining whether a sanction is punishment is a two-step process. First, we must determine whether the legislature intended the proceedings to be civil or criminal. In making this determination, we may examine the declared purpose of the legislature as well as the structure and design of the statute. *Ursery*, 518 U.S. at 279, 116 S.Ct. at 2147, 135 L.Ed.2d at 561. If the intent was civil, we must next ask whether the "statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Hurst*, 688 N.E.2d at 404. The second part of the test requires the party challenging the statute to

[enumerated crimes].

IND.CODE § 5–2–6–3(b).

provide "the clearest proof" of the punitive purpose or effect of the statute. *Id.* Thus, in determining whether a sanction is civil or criminal, we cannot look solely to the label given to it by the legislature, but must also examine whether it is so punitive in effect as to no longer be properly called a civil sanction. *Id.*

### B. Legislative Intent

Applying this test, we first look to the Act to see if we may discern the legislature's intent. The Appellants are correct in their contention that it is difficult to determine legislative intent since there is no available legislative history and the Act does not contain a purpose statement. However, there are other ways to discern legislative intent. We note that the Act is placed in Title 5 of the Indiana Code, which governs state and local administration, rather than in Title 35, which contains the criminal code. In determining whether an act was criminal or civil, the *Hendricks* Court stated that the fact that the legislature placed the act in the probate code, rather than the criminal code, evidenced its objective to create a civil proceeding. *Hendricks*, 521 U.S. at 356, 117 S.Ct. at 2082, 138 L.Ed.2d at 511. Similarly, in *Hurst*, in determining that a monetary fine assessed against a motorist for committing a traffic violation was a civil sanction and not punishment, our supreme court observed that the underlying traffic offense was an infraction under Title 9 of the Indiana Code, the traffic code, and not a crime under Title 35, the criminal code. *Hurst*, 688 N.E.2d at 405. Therefore, we find that the placement of the Act outside of our criminal code indicates that a person's inclusion in the registry is not intended to be a criminal sanction.

Additionally, the overall design of the Act's provisions signifies a regulatory intent. Registration apprises law enforcement officials of basic information about an offender living in the area. It does not restrain the offender's movement; rather, the offender need only notify law enforcement officials of any change of address within seven days. IND.CODE § 5–2–12–8. Further, the information required of the offender is not burdensome. An offender need only provide limited personal information, including his or her name, date of birth, physical description, Social Security number, driver's license number, and address. IND.CODE § 5–2–12–6. Lastly, the offender's duty to register terminates ten years after he is released from prison, placed on parole, or placed on probation, whichever occurs last. IND.CODE § 5–2–12–13. These provisions evidence an intent to monitor the whereabouts of the offender, not to punish the offender. *See Russell v. Gregoire*, 124 F.3d 1079, 1088–89 (9th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1191, 140 L.Ed.2d 321 (1998).

### C. Purpose and Effect

The second part of the test requires that the Appellants provide "the clearest proof" that inclusion in the Registry is so punitive in effect that it overcomes the nonpunitive legislative intent and constitutes punishment under the Ex Post Facto Clause. *Hurst*, 688 N.E.2d at 404, 405. The Appellants do not challenge the registration portion of the Act on this point.[5] Rather, they assert that the notification or distribution portion is excessive and reaches the level of punishment.

#### 1. Excessiveness of Notification

First, the Appellants assert that notification under the Act is punitive because disclosure is overly broad and contains no limitations on who may receive the information. In support of their argument, the Appellants rely on *State v. Myers*, 260 Kan. 669, 923 P.2d 1024 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997) and *Doe v. Attorney General*, 425 Mass. 217, 680 N.E.2d 97 (1997).[6] In those cases, the court struck down the notification portion of the sex offender registration statute in question finding that unrestricted public notification is punitive in nature, thus violating the Ex Post

---

**5.** Under the Act, those convicted of their offenses prior to June 30, 1994 are not required to comply with the registration requirements. Therefore, the appellants challenge only the notification portion of the Act.

**6.** The appellants also rely on *Doe v. Gregoire*, 960 F.Supp. 1478 (W.D.Wash.1997), however, this decision was overruled by *Russell v. Gregoire*, 124 F.3d 1079, 1093 n. 11 (9th Cir.1997).

Facto Clause. We disagree with this reasoning. The public dissemination of information regarding crime has always been a priority in our society. Indeed, in order to allow members of the public to protect themselves, the government has traditionally published warnings, wanted posters, and arrest records. We find the words of the Third Circuit in *E.B. v. Verniero,* 119 F.3d 1077, 1100 (3d. Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998), persuasive:

> When there has been probable cause to believe that someone has committed a crime, our law has always insisted on public indictment, public trial, and public imposition of sentence, all of which necessarily entail public dissemination of information about the alleged activities of the accused.... [W]e insist upon this public dissemination for a number of reasons: It "heightens public respect for the judicial process," it "permits the public to ... serve as a check upon the judicial process," and it "plays an important role in the ... free discussion of governmental affairs." Wholly independent of the criminal sanctions that conviction may entail, the consequences of our law requiring this public dissemination of information can be severe.... Nevertheless, our laws' insistence that information regarding criminal proceedings be publicly disseminated is not intended as punishment and has never been regarded as such.

*Verniero,* 119 F.3d at 1100 (citations omitted).

As the State points out, a significant portion of the information contained in the Registry is already in the public domain. In fact, the information found in published court opinions and in court records, which may be accessed by the public, is often more extensive and descriptive than that contained in the Registry. Indiana's decision to compile this information and place it in one source "does not add a punitive consequence to an otherwise regulatory measure." *Doe v. Pataki,* 120 F.3d 1263, 1280 (2d. Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1066, 140 L.Ed.2d 126 (1998).

Moreover, the cases on which the Appellants rely were written before the Supreme Court's *Hendricks* decision. In *Hendricks,* the Supreme Court analyzed Kansas' Sexually Violent Predator Act. This act established procedures for the civil commitment of persons who are likely to engage in "predatory acts of sexual violence" based on proof of "mental abnormality" or "personality disorder." *Hendricks,* 521 U.S. at 350, 117 S.Ct. at 2076, 138 L.Ed.2d at 505. The Court ruled that the civil commitment did not constitute punishment and therefore did not violate the Ex Post Facto and Double Jeopardy Clauses. After first determining that the legislature had a nonpunitive purpose in enacting the statute, the Court stated that, although the statute imposed an affirmative restraint and a sanction traditionally regarded as punishment, these factors did not override its nonpunitive nature. *Id.* 117 S.Ct. at 2079, 138 L.Ed.2d at 508. In so reasoning, the Court noted that "[t]o prove that a civil proceeding imposes punishment 'is a heavy burden.'" *Id.*

In light of *Hendricks,* we cannot conclude that Indiana's notification provision rises to the level of punishment. It is a regulatory measure that imposes no affirmative restraint or disability on the offender. Moreover, it is not excessive given the state interest at stake. We also note that, since the *Hendricks* decision, several courts have rejected *ex post facto* arguments similar to those presented by the Appellants here. *See Roe v. Office of Adult Probation,* 125 F.3d 47 (2d Cir.1997); *Gregoire,* 124 F.3d 1079; *Pataki,* 120 F.3d 1263; *Verniero,* 119 F.3d 1077.

The Appellants also argue that since Indiana's distribution scheme does not provide for limited public notice levels based on the offender's risk, as many other state statutes do, the Registry's distribution does not pass constitutional scrutiny. Many states do provide for varying levels of offender information distribution based on the level of risk of the offender. For example, in New Jersey, the prosecutor of the county where the sex offender intends to reside assesses the risk of reoffense for each registered individual. The offender may pose a low, moderate, or high reoffense risk. *Verniero,* 119

F.3d at 1083. If the offender is assessed at "low risk," notification extends only to law enforcement officials. If the offender is assessed at "moderate risk," then law enforcement officials, schools, and community organizations are alerted. *Id.* If the offender is "high risk," there is "community notification," where members of the public likely to encounter the registrant are notified. *Id.*

In contrast, Indiana's Registry does not divide offenders into risk categories. Instead, the Registry lists the offense committed and the sentence imposed for each named offender, without categorizing the offenders. As a result, the Act provides for a more limited notification scheme than does New Jersey's. For example, Indiana's Registry does not include the offender's home address, place of employment, photograph, or vehicle information, as does New Jersey's. Additionally, Indiana only distributes the Registry to a narrow range of entities—any one else wanting to receive the information in the Registry must affirmatively seek it. On the other hand, New Jersey's statute, in "high risk" cases, provides for actual community notification, where members of a community are notified that a high risk sex offender has moved into their community. *Id.* At any rate, we decline the invitation to compare Indiana's registration model with that of other states in determining whether it violates the Ex Post Facto Clause. States frequently make differing policy decisions and pass laws accordingly. It is not our role to consider legislative judgment or to weigh policy decisions in this case; rather, we need only determine whether our sex offender registration statute withstands constitutional scrutiny.

Lastly, the Appellants argue that the Act is unconstitutional since it does not provide penalties or warnings for those who misuse the Registry and unlawfully retaliate against the offenders. We disagree. We presume that the citizens of our state are aware of our criminal laws and are legally responsible for any unlawful action they take against others. We also presume that our law enforcement officials will investigate and prosecute individuals who choose to take such action. Thus, it was not necessary for our legislature to include additional criminal penalties or warnings regarding potential unlawful acts committed in connection with information obtained in the Registry.

## 2. Public Retaliation

The Appellants next argue that the Registry leads to public retaliation and, therefore, has a punitive effect. Specifically, the Appellants claim that they have been victims of verbal public attacks, intimidation, and violence as a result of their status as sex offenders. Spencer states that he has been confronted publicly several times and verbally attacked about his molestation conviction. Appellant's Br. at 8. Bridwell asserts that he has received threatening letters, has had a sign hung on his property reading "child molester," has had shots fired at him with a BB gun, and has had his automobile and home vandalized on several occasions. Bridwell was also forced to leave his place of employment after being attacked by a co-worker who called him a "child molester." Appellant's Br. at 10. However, the appellants admit that they cannot establish with clear proof that publication of their names in the sex offender registry caused these incidents. Appellant's Br. at 8, 9. In our review, we must focus only on the effects directly attributable to notification. Without clear proof of retaliation based on publication, we are asked to consider only possible illegal responses from the community, which is not in our prerogative. As discussed earlier, as a court, we must presume that our law enforcement officials will protect offenders from any acts of vigilantism.

█ We acknowledge that the indirect effects of notification on the offenders and their families may be harsh. Indeed, similar cases document that incidents of "vigilante justice" are not uncommon and occur with frequency. *See Verniero,* 119 F.3d at 1077. These incidents may include lost employment opportunities, housing discrimination, threats, and violence. *Id.; Pataki,* 120 F.3d at 1279. However, public dissemination of information regarding criminal activity has always carried the risk of negative consequences. Yet, dissemination of such information, in and of itself, has never been regarded as punishment when done in the furtherance

of a legitimate governmental interest. *Id.* at 1100. After reviewing the real and potential risks faced by the appellants and other offenders, we cannot say that the statute violates the Constitution. "Whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the 'sting of punishment.'" *Department of Revenue v. Kurth Ranch,* 511 U.S. 767, 777 n. 14, 114 S.Ct. 1937, 1946 n. 14, 128 L.Ed.2d 767, 777 n. 14 (1994). The Act's effect is not so egregious as to convince us that it is not regulatory or remedial.

Finally, we note that, although notification conveys to the public information that may lead to retaliation against the sex offender, it is the offender's prior criminal act and conviction that motivates the behavior. The incidents described by the Appellants are dependent on acts by third parties and may have resulted from information available prior to publication in the Registry. Further, the incidents are not consequences imposed by the Act itself, but flow from the fact of the underlying criminal act. *Pataki,* 120 F.3d at 1280. Whatever burdens arise from notification, they are not sufficiently severe as to constitute punishment.

Based on the foregoing, we conclude that the Act does not violate the prohibition on *ex post facto* laws contained in the federal Constitution or the Indiana Constitution.

## II. Statutory Claim

■ The target of the attack of the Appellant's second issue presented is not the Act itself, but the internal registry distribution policy of the Institute. Indiana Code Section 5–2–12–11 provides that "the institute shall send one (1) paper copy of the sex offender registry to" certain enumerated entities. However, the Institute will also distribute the Registry to any person who requests it, with the exception of prisoners, and makes the Registry available on the Internet.

The Appellants claim that this distribution practice violates the language of the Act. We disagree. The plain language of the Act does not preclude the Institute from distributing the registry to the public; rather, it identifies who "shall" receive the registry. Moreover, under Indiana Code Section 5–2–6–3, one of the purposes of the Institute is to "[e]stablish and maintain, in cooperation with the office of the secretary of family and social services, a sex and violent offender registry." IND. CODE § 5–2–6–3(a)(10). Having been statutorily charged with the responsibility of establishing and maintaining the Registry, we attach "great weight" to the Institute's decision to make the registry available to those requesting it and to those who wish to access the information on the Internet. *See Natural Resources Comm'n v. Porter County,* 576 N.E.2d 587, 588 (Ind.1991). Therefore, we conclude that the Institute's actions are not precluded under the Act, are reasonable interpretations of it, and should be upheld.

Affirmed.

BAKER, J. concurs.

ROBB, J. concurs and files separate opinion.

ROBB, J., concurring with separate opinion.

I concur in the majority opinion, but write separately to address a specific portion of the statute not discussed therein. Indiana Code section 5–2–12–12 describes language which must be included on a copy of the Registry sent to an entity required by section 5–2–12–11:

A person whose name appears on this registry has been convicted of a sex offense or a violent offense against a child or has been adjudicated a delinquent child for an act involving another child that would be a sex or violent offense if committed by an adult. Continuing to employ a person whose name appears on this registry may result in civil liability for the employer.

Given the state of our law on respondeat superior liability, especially the limited interpretation our courts have given the "scope of employment" requirement, it is doubtful that any court would ever subject an employer to civil liability for injuries arising out of the employment of a person whose name appears on the Registry. If inclusion of this language is a legislative attempt to provide the foreseeability of misconduct which might otherwise be found lacking, courts are almost

certain to find under our current law that the employee was not acting within the scope of his employment. This is so because no employer is ever going to hire an employee for the express purpose of committing a sex offense. *See City of Fort Wayne v. Moore,* 706 N.E.2d 604 (Ind.Ct.App., 1999) (Robb, J., dissenting) (majority held that the City was not responsible for a police officer's attack on a motorist during an ostensible traffic stop because the officer was off-duty, out-of-uniform and in an unmarked car at the time of the stop).

I am left to wonder, then, what was the legislature's purpose in requiring that this language be included on each copy of the Registry sent to a required entity and what does it mean for respondeat superior liability in the future? I am of the opinion that the "scope of employment" requirement has been construed so narrowly as to render respondeat superior liability virtually nonexistent. I believe that the legislature's mandate that a warning that civil liability may result if a known sex offender commits misconduct proximate to his employment be included with the Registry bolsters my more expansive approach to "scope of employment" and respondeat superior liability.

Nevertheless, I agree with the majority that the Registry does not violate the *ex post facto* prohibitions of the state and federal constitutions, and that the Institute's practice of making the Registry available not just to the required entities is within the dictates of the statute. I therefore concur in the majority opinion.