### Richard P. WALLACE, Appellant–Defendant,

### v.

### STATE of Indiana, Appellee–Plaintiff.

#### No. 49A02–0706–CR–498.

Court of Appeals of Indiana.

Jan. 9, 2008.

Transfer Granted March 24, 2008.

Kathleen M. Sweeney, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Richard P. Wallace appeals his conviction for Failing to Register as a Sex Offender,[1] a class D felony. Specifically, Wallace argues that the requirement for him to register is an ex post facto law and the State forfeited its right to prosecute him in light of a previous plea agreement that had been negotiated. Finally, Wallace contends that the evidence was insufficient to support the conviction. Finding no error, we affirm the judgment of the trial court.

## FACTS

In 1988, Wallace was charged with one count of child molesting, a class B felony, and one count of child molesting, a class C felony. Wallace pleaded guilty to the class C felony child molesting count on February 15, 1989, in accordance with a plea agreement that he negotiated with the State. Thereafter, the trial court imposed a five year suspended sentence and various conditions of probation.

In 1994, our General Assembly enacted Zachary's Law, which required probationers and parolees who had been convicted of child molesting to register as a sex "offender." P.L. 11–1994 § 7. Over the next several years, the registration scheme was modified to apply to individuals convicted of child molesting after June 30, 1994.[2] Prior to 2001, the sex offender registry statute did not require individuals convicted of sexual misconduct with a minor as a Class C felony to register.[3] However, the 2001 amendments to the statute included such individuals.[4] More specifi-

---

1. When Wallace committed the offense, the statute was codified as Indiana Code section 5–2–12–9. In 2006, this statute was repealed, and the current version is codified at Indiana Code section 11–8–8–17.

2. P.L. 33–1996 § 2.

3. Ind.Code § 5–2–12–4(*l*)(H).

4. I.C. § 5–2–12–4(a)(8).

cally, the amended version provided that a sex and violent offender required to register with local law enforcement was defined as a person convicted of child molesting regardless of the age or date of the conviction.[5]

In 2003, Wallace's former wife notified authorities that Wallace had been convicted of a sex offense but had never registered as an offender. In response, Lisa Reidenbach, the Sex Offender Registration Coordinator for the Indianapolis Police Department, investigated the claim and determined that Wallace was required to register because his criminal conduct had involved a minor under twelve years old. As a result, Reidenbach sent Wallace a letter on November 20, 2003, advising him of the need to register. As of December 28, 2003, Reidenbach had not received a response from Wallace, so she sent Wallace another letter. Wallace responded by appearing at Reidenbach's office on December 31, 2003, at which time he told her that he would not register as a sex offender because the plea agreement executed in 1989 had not required him to do so.

On January 6, 2004, the State charged Wallace with failing to register as a sex offender, a class D felony. Wallace subsequently filed a motion to dismiss the charge, claiming that dismissal was warranted "because his probation expired approximately March of 1992." Appellant's App. p. 42. In response, the State asserted:

> The Defendant is required to register as a sex offender under I.C. 5–2–12–13,[[6]] subsection (c) as the victim was less than 12 years old and the defendant was over the age of 18 years of age at the time of the crime.... Therefore, according to

the Statute the defendant is required to register for life.

*Id.* at 44. The trial court denied Wallace's motion to dismiss, and following a jury trial on January 31, 2007, Wallace was found guilty as charged. Thereafter, the trial court sentenced Wallace to 545 days of incarceration with all time suspended to probation. Wallace now appeals.

## DISCUSSION AND DECISION

### I. Ex Post Facto Claim

█ Wallace first claims that the sex offender registration requirement amounts to an ex post facto law. Moreover, Wallace asserts that his conviction must be set aside because the various revisions to the sex offender registry "have become so expansive that the registry and its related criminal sanctions are punitive." Appellant's Br. p. 10.

█ We initially observe that legislation under constitutional attack is clothed in a presumption of constitutionality. *Phelps v. Sybinsky*, 736 N.E.2d 809, 815 (Ind.Ct.App.2000). It is the defendant's burden to rebut this presumption, "and all reasonable doubts must be resolved in favor of an act's constitutionality." *Id.*

█ The Indiana Constitution provides that "[n]o ex post facto law ... shall ever be passed." Ind. Const. Art. I, § 24. The purpose of this prohibition "is the assurance that legislative acts will give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Iseton v. State*, 472 N.E.2d 643, 650 (Ind.Ct.App.1984). The United States Constitution also prohibits ex post facto laws. U.S. Const. Art. I, § 10.

---

**5.** P.L. 238–2001 §§ 4–5, 13.

**6.** This statute related to the termination of the duty to register and was repealed in 2006.

The statute is currently codified at Indiana Code section 11–8–8–19.

■ An ex post facto law is one that applies retroactively to disadvantage an offender's substantial rights. *Armstrong v. State,* 848 N.E.2d 1088, 1092 (Ind.2006). In other words, the ex post facto laws prohibit the enactment of a law that imposes a punishment for an act that was not punishable at the time it was committed or imposes additional punishment to that then prescribed. *Goldsberry v. State,* 821 N.E.2d 447, 464 (Ind.Ct.App.2005).

■ The analysis of whether a statute is ex post facto is the same under the federal and state constitutions. *Id.* Specifically, when examining ex post facto claims, we engage in a two-part test:

First, we must determine whether the legislature intended the proceedings to be civil or criminal. In making this determination, we may examine the declared purpose of the legislature as well as the structure and design of the statute. If the intent was civil, we must next ask whether the "statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention to deem it civil."

The second part of the test requires the party challenging the statute to provide "the clearest proof" of the punitive purpose or effect of the statute. Thus, in determining whether a sanction is civil or criminal, we cannot look solely to the label given to it by the legislature, but must also examine whether it is so punitive in effect as to no longer be properly called a civil sanction.

*Spencer v. O'Connor,* 707 N.E.2d 1039, 1042–43 (Ind.Ct.App.1999). The focus is not on whether the legislative change causes a disadvantage, but rather whether the change increases the penalty by which a crime is punishable or alters the definition of criminal conduct. *Goldsberry,* 821 N.E.2d at 464. The principle of this prohibition is that persons have a right to fair

warning of the conduct that will give rise to criminal penalties. *Armstrong,* 848 N.E.2d at 1094.

With regard to Wallace's arguments, this court previously determined in *Spencer* that the sex offender registration requirement is not, in and of itself, an ex post facto law. 707 N.E.2d at 1046. We determined that our General Assembly intended for the sex offender registration provisions to be civil in nature. Specifically, we observed that the provisions of the sex offender registry statute "evidence an intent to monitor the whereabouts of the offender, not to punish the offender." *Id.* at 1043.

Moreover, after our decision in *Spencer,* the United States Supreme Court rejected an ex post facto challenge to the sex offender registration requirement in Alaska, finding that the registration scheme was civil in nature. *Smith v. Doe,* 538 U.S. 84, 105–06, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). In *Smith,* an "intent-effects" test was applied to the registration law at issue to determine whether the law was criminal or civil in nature. *Id.* at 92, 123 S.Ct. 1140. Under this approach, it was determined that the legislative intent of the Alaskan sex offender registration system was non-punitive. *Id.* at 96, 123 S.Ct. 1140. The factors that the *Smith* court deemed most relevant were: 1) whether the regulatory scheme has historically been regarded as punishment; 2) whether the law imposes an affirmative restraint or disability; 3) whether the law promotes the traditional goals of punishment; 4) whether the law is rationally related to a non-punitive purpose; and 5) the excessiveness of the law in application. *Id.* at 97, 123 S.Ct. 1140. The *Smith* Court also noted that "[o]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a

civil remedy into a criminal penalty." *Id.* at 92, 123 S.Ct. 1140.

Most recently, a different panel of this court addressed nearly the precise argument that Wallace presents today. In *Douglas v. State,* 878 N.E.2d 873 (Ind.Ct. App., 2007), the defendant was convicted of three counts of sexual misconduct with a minor, a class C felony, in 1997. On November 8, 2001, Douglas was released from his sentence on those charges. When Douglas was convicted, the sex offender registry statute did not require individuals convicted of sexual misconduct with a minor as a class C felony to register.[7] However, the statute was modified in 2001 to include such individuals.[8] The trial court applied the amended version of the sex registry statute in requiring Douglas to register as a sex offender. Op. at 1273. As a result, Douglas argued that the amendment to the sex offender registration statute—which expanded its applicability—created an additional punishment because a defendant's failure to register results in incarceration. Douglas claimed that the sex offender registry statute was an ex post facto law because the statute did not apply to him when he was convicted of the offense. Op. at 1272.

In rejecting Douglas's claim, we observed that "the overall legislative intent in enacting the sex offender registry was civil and regulatory in nature.... [T]he registration does not restrain the offender's movement, and the information required to register is not burdensome." Op. at 1274. We further observed that

> The imposition of the registration requirement in this case is retrospective in that it would not have applied to Douglas on the day of his sex offense conviction. However, the consequence of violating the registration requirements is not retrospective, because the amended version of the statute was in effect when Douglas failed to register. "Any punishment flowing from the sex offender registration statutes comes from a failure to register, not from the past sex offense." *Meinders v. Weber,* 604 N.W.2d 248, 259 (S.D.2000). Because the punishment arises from a separate offense, the sex offender's failure to register, the punishment is prospective and does not punish him or her for past criminal activity. *Kitze v. Va.,* 23 Va.App. 213, 475 S.E.2d 830, 833 (1996). As noted by the New Jersey Supreme Court:

> > The fact that some deterrent punitive impact may result, does not, however, transform [the sex offender registration] provisions into 'punishment' if that impact is an inevitable consequence of the regulatory provision, as distinguished from an impact that results from 'excessive provisions, provisions that do not advance the regulatory purpose.

> *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367, 405 (1995).

*Id.* Op. at 1274. We concluded that there "was no ex post facto issue in regard to the consequence of Douglas being prosecuted for a separate offense that was illegal at the time of its commission." *Id.* Op. at 1275–76.

In light of our holding in *Douglas,* we reach the same result here. Indeed, Wallace's sex offender status existed well before he engaged in the criminal conduct of failing to register as a sex offender. In essence, the duty to register was imposed in 2001, and Wallace became aware of that requirement no later than 2003. Therefore, even though Wallace's predicate of-

---

7. Ind.Code § 5–2–12–4(*l*)(H).

8. I.C. § 5–2–12–4(a)(8).

fense was committed before the imposition of the new duty, he cannot successfully characterize the relevant statutes as ex post facto laws. Thus, his claim fails.[9]

## II. Effect of Plea Agreement

 In a related issue, Wallace argues that the State forfeited its right to prosecute him for failing to register as a sex offender. Specifically, Wallace claims that the State should not have prosecuted him for this offense because he reasonably believed that the terms of the plea agreement provided that he would not have to register.

 We initially observe that plea agreements are contracts entered into between the defendant and the State. *Lee v. State*, 816 N.E.2d 35, 38 (Ind.2004). The prosecutor and the defendant are the contracting parties, and the trial court's role with respect to their agreement is dictated by statute. *Pannarale v. State*, 638 N.E.2d 1247, 1248 (Ind.1994). Specifically, Indiana Code section 35-35-3-3(e) provides that "if the court accepts a plea agreement, it shall be bound by its terms." On the other hand, this court has recognized that a plea agreement does not necessarily control the application of the criminal law to the defendant for all time to come:

> We hold that the Sex Offender Registration Act is mandatory and that a trial court must comply with the Act regardless of the terms of the defendant's plea agreement. Because placement on the Registry does not amount to an additional penalty, it need not be included with the agreement's sentencing terms. In other words, a plea agreement has no effect on operation of the Act.

*In re G.B.*, 709 N.E.2d 352, 355-56 (Ind.Ct. App.1999).

Of course, Wallace's plea agreement negotiated in 1989 makes no mention of whether he would have to register as a sex offender, inasmuch as the registry did not exist at that time. However, in light of the clear pronouncement in *G.B.*, Wallace cannot successfully maintain that the plea agreement had any impact on his obligation to register as a sex offender.

## III. Sufficiency of the Evidence

 Finally, Wallace contends that the evidence was insufficient to support his conviction. Specifically, Wallace argues that because the State alleged that the date of the offense was January 5, 2004, "it is impossible that on January 5, 2004 for Wallace to have failed to register for the calendar year since it was a mere five (5) days old." Appellant's Br. p. 7.

We initially observe that when reviewing challenges to the sufficiency of the evidence, we will neither weigh the evidence nor judge the credibility of the witnesses. *Burkes v. State*, 445 N.E.2d 983, 986 (Ind.

9. As an aside, we note that both this court and our Supreme Court have rejected ex post facto challenges in other areas of the law. For instance, in *Teer v. State*, 738 N.E.2d 283 (Ind.Ct.App.2000), the defendant was charged with possession of a firearm by a serious violent felon. The defendant's status as a serious violent felon was based on a 1996 conviction. *Id.* at 286 n. 1. However, the statute that criminalized the defendant's possession of a firearm was not enacted until nearly three years after that conviction. As a result, the defendant claimed that an ex post facto violation occurred. This court rejected that position, observing that "the statute essentially prohibits the possession of a firearm by a serious violent felon; it neither re-punishes [the defendant] for the [previous] crime he committed nor enhances the penalty for the [previous] crime." *Id.* In so holding, this court followed the rationale in *Funk v. State*, 427 N.E.2d 1081 (Ind.1981), where our Supreme Court upheld the habitual offender statute against an ex post facto challenge on the grounds that the habitual offender penalty punished the last committed offense and not the prior crimes upon which the enhancement was based. *Id.* at 1087.

1983). We will consider only the evidence favorable to the judgment, together with all reasonable inferences flowing therefrom. *Id.* at 986–87. If there is substantive evidence of probative value to support the judgment, it will not be disturbed. *Id.*

As noted above, Wallace was charged with failure to register as a sex offender in violation of Indiana Code section 5–2–12–9,[10] which provided that

An offender who knowingly or intentionally;

 (1) fails to register under this chapter; or

 (2) fails to complete and submit a new registration form as required under section 8(a)[ [11] ] of this chapter;

commits a Class D felony. However, the offense is a Class C felony if the offender has a prior unrelated offense under this section.

In relevant part, the State's information charging Wallace with the offense alleged that:

On or about Jan. 5, 2004, in Marion County, State of Indiana, RICHARD P. WALLACE, having a duty to register as a sexual offender, did knowingly or intentionally fail to register as a sexual offender, within seven (7) days of release from Penal Institution or maintain their annual registration requirement with Local Law Enforcement Authority.

Appellant's App. p. 25.

When Wallace was charged, Indiana Code 5–2–12–5(f) stated, "An offender shall complete a registration form." Additionally, subparagraph (g) of the statute provided that "The offender shall register not more than seven days after the offender . . . is placed on probation."

In this case, Wallace had not complied with the requirements of Indiana Code Chapter 5–2–12 as of the date that he had been charged. Nonetheless, Wallace argues that his conviction must be set aside because the evidence presented at trial did not precisely match the language of the charging information. More specifically, Wallace claims that he could not have committed the offense because he was never released from a penal institution and there was not enough time for him to have violated a requirement to register annually as the information alleged. Appellant's Br. p 9–10.

 Notwithstanding this contention, we note that any variance between the offense as charged and the facts adduced at trial is not fatal to the conviction. This court has determined that "not all variances between allegations in the charge and the evidence at trial are fatal." *Tucker v. State,* 725 N.E.2d 894, 896 (Ind.Ct. App.2000). Indeed, a variance will be considered fatal only if it misled the defendant in the preparation and maintenance of his defense with resulting harm or leaves the defendant vulnerable to double jeopardy in a subsequent criminal proceeding covering the same events, facts, and evidence. *Winn v. State,* 748 N.E.2d 352, 356 (Ind. 2001).

Here, although the State was required to prove Wallace's failure to register, we cannot conclude that it was obligated to demonstrate the precise moment in which the failure took place. Moreover, the statute required Wallace to complete a registration form following his release from probation. Of course, Wallace had completed his term of probation long before

---

**10.** Again, the current version of this statute is codified at Indiana Code section 11–8–8–17.

**11.** This section required an offender to complete and submit a new registration form not more than seven days after an address change.

the registration requirement was made applicable to him in 2001. However, Wallace was in violation of his duty to register—including the requirement that he complete a registration form—from the date that the duty to register was imposed, July 1, 2001, until the date that he was charged with failing to register. And the State presented sufficient evidence that Wallace never fulfilled this duty. Therefore, we conclude that the evidence was sufficient to sustain Wallace's conviction.

The judgment of the trial court is affirmed.

DARDEN, J., and BRADFORD, J., concur.