FILED

Jan 31 2017, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Elizabeth A. Knight
Byron D. Knight
Lisa A. Baron
Knight Hoppe Kurnik & Knight, Ltd.
Schererville, Indiana

ATTORNEYS FOR APPELLEE

Matthew J. Schad
George A. Budd, V
Schad & Schad, P.C.
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Harrison County Sheriff's Department, | January 31, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 22A01-1605-CT-1080 |
| v. | Appeal from the Floyd Circuit Court |
| Leandra Ayers, Personal Representative of the Estate of Christine Britton, Deceased, | The Honorable J. Terrence Cody, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 22C01-1104-CT-558 |

**Baker, Judge.**

[1] The Harrison County Sheriff's Department (the Sheriff) appeals the trial court's denial of its motion to correct error in which the Sheriff argued that it was entitled to judgment on the evidence. The trial court's order came after a jury returned a verdict in favor of Leandra Ayers, representative of the Estate of Christine Britton (the Estate), for $1.2 million. The jury found the Sheriff vicariously liable under the doctrine of respondeat superior because Christine's husband, Sheriff's Deputy John Britton, knew that Christine had expressed suicidal thoughts but left her in a room by herself with his gun. The Sheriff argues that there is insufficient evidence, as a matter of law, that John was acting in the scope of his employment during the incident, and that the trial court made several errors in the admission of evidence and in its jury instructions. Finding that John's actions were undertaken in a purely private capacity and had no connection to his employment as a sheriff's deputy, we reverse and remand with instructions to grant the Sheriff's motion to correct error.

## Facts[1]

[2] On March 29, 2009, Christine called her husband, John, to tell him that they had dinner plans that evening. He arrived home after 3:00 p.m., and Christine invited him into bed. After having sex, the couple showered together and spent time watching television. They began to get ready to leave, but they were

---

[1] We held oral argument on January 10, 2017, in Indianapolis. We thank the attorneys for their stimulating and informative oral advocacy.

running late. John asked Christine whether she was "genetically unable to be anywhere on time." Tr. p. 486.

[3] This set off an argument. Christine began by telling John that she always had to do the work around the house, but she quickly progressed to making comments like, "you make me so mad I could kill myself," to which John responded, "oh whatever." *Id.* at 488.[2] John called the other couple to let them know that he and Christine would not be attending dinner.

[4] As a Sheriff's Deputy, John always wore his personal weapon when he went out, even when he was off duty. Since he had been planning to go out, he had his gun on him during this argument. After they argued some more, Christine reached for John's gun but he bear hugged her so that she could not reach it. He told her, "don't touch my gun." *Id.* She responded, "I'll just get one out of the safe." *Id.* at 489.[3] After Christine again threatened to kill herself, John said "fine," took his gun out, and laid it on the bed. *Id.* at 497. He walked out of the bedroom and toward the front door. Before he exited the house, he heard a gunshot. He ran back to the bedroom and saw that Christine had shot herself. John attempted to administer first aid, and he called the police. Christine died as a result of the gunshot.

---

[2] John testified that this was not the first time Christine had threatened suicide, and she had even put a gun to her temple before, but that she typically calmed down and went on as if nothing had happened.

[3] John later testified that, in addition to the guns in the safe, they also regularly kept a loaded shotgun under the bed, a loaded pistol on each side of the bed, and an AR-15 in the bathroom.

[5] A forensic investigation confirmed that Christine had pulled the trigger, not John. Although there was blood on his sweater, there was no impact splatter, indicating that he was not in the room at the time of the gunshot. Christine did have impact splatter on her, except for the palm of her hand, indicating that she was holding the gun. Expert witnesses later testified, with a reasonable degree of scientific certainty, that the gunshot was self-inflicted.[4]

[6] The Sheriff brought disciplinary action against John and recommended his termination. It charged that John did not conform to laws, engaged in conduct unbecoming an officer, and improperly used his weapons.

[7] The Estate filed a civil complaint against the Sheriff and John for Christine's death, but John was later dismissed from the case. The Estate had four legal theories in its amended complaint: 1) Christine's death was caused by John's negligence and the Sheriff was vicariously liable under the doctrine of respondeat superior; 2) Christine's death was caused by the excessive force used by John to restrain her, and the Sheriff was liable under respondeat superior; 3) Christine's death was caused by the Sheriff's negligent entrustment of John with guns and ammunition; and 4) Christine's death was caused by the Sheriff's negligent retention of John as an employee.

---

[4] John was charged by the State with assisting a suicide, and ultimately pleaded guilty to and was convicted of criminal recklessness.

[8] A jury trial was held on February 1-5, 2016. Following the presentation of evidence, the Sheriff filed a motion for judgment on the evidence, arguing that the Estate did not meet its burden of proof on any of its claims. The trial court granted the motion as to the final three counts, but allowed the trial to proceed on the Estate's first theory. The jury found in favor of the Estate and awarded it $1.2 million. The Sheriff filed a motion to correct error, reiterating its argument in its earlier motion for judgment on the evidence, but the trial court denied the motion.[5] The Sheriff now appeals.

## Discussion and Decision

[9] The Sheriff argues that, as a matter of law, it cannot be held liable for John's actions. Although it has several theories supporting this conclusion, we will focus on one that is dispositive—whether John was acting within the scope of his employment during the relevant time period.

[10] When this Court reviews a trial court's ruling on a motion for judgment on the evidence, we apply the same standard as the trial court, considering only the evidence and reasonable inferences most favorable to the nonmoving party. *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind. Ct. App. 1999). Judgment on the evidence is appropriate only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element

---

[5] The trial court granted one portion of the motion to correct error, remitting the $1.2 million award to $700,000, pursuant to the statutory cap in the Indiana Tort Claims Act. Ind. Code § 34-13-3-4(a)(1)(C).

of the claim. *Id.* A judgment on the evidence should be entered only if the evidence points unerringly to a conclusion not reached by the jury. *Id.*

[11] Under the doctrine of respondeat superior, vicarious liability will be imposed upon an employer where an employee has inflicted harm while acting "within the scope of his employment." *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2003). An employee acts within the scope of his employment when the act is incidental to the conduct authorized by an employer or if it, to an appreciable extent, furthers the employer's business. *Id.* An employee does not act within the scope of his employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer. *Id.* at 284.

[12] Criminal acts of an employee may produce vicarious liability if the act arises out of the context in which an employer put the employee. For example, in *Stropes v. Heritage House Children Center*, our Supreme Court approved the application of vicarious liability to an employer whose employee sexually assaulted a resident of the center because the sexual assault stemmed from the employee's authorized act of bathing the victim. 547 N.E.2d 244, 250 (Ind. 1989). In such circumstances, the test is whether the employee's actions were at least for a time authorized by his employer. *Id.* If some of the employee's actions were authorized, the question of whether any unauthorized acts were within the scope of employment is one for the jury, but if none of the employee's acts were authorized, the matter is a question of law. *Konkle v. Henson*, 672 N.E.2d 450, 456 (Ind. Ct. App. 1996).

[13]    Regarding the doctrine of respondeat superior, the Estate's central argument is that a police officer is always on duty. The current county Sheriff testified that the department has a "sheep dog philosophy and that sheep dog philosophy is one that the sheep dog is always protecting the flock." Tr. p. 424. More specifically, the Estate argues that John was furthering his employer's interests when subduing Christine and preventing her from reaching his gun because the Sheriff is charged with the authority to apprehend any individual who appears mentally ill and in need of treatment. Ind. Code § 12-26-4-1. The Estate argues that, at a minimum, several of John's acts were authorized by the Sheriff, and that therefore the issue should be considered a question of fact for the jury rather than a question of law.

[14]    We cannot agree that the doctrine of respondeat superior should apply to the particular facts of this case. In all of his relevant acts, John was acting as a husband, not a sheriff's deputy. He was not standing in his own bedroom by dint of the Sheriff's authorization—he was in the bedroom in a purely private capacity, in the most intimate setting possible, of one spouse engaging with another spouse. Under these circumstances, John's conduct can in no way be tied or attributed to his employer, the Sheriff. The Estate is correct to note that an employee can still be within the scope of his employment if there is a mixture of motives, and that the Estate is not required to "show that the acts of the employee were motivated solely or predominately by the desire to serve the employer." *Dodson v. Carlson*, 14 N.E.3d 781, 783 (Ind. Ct. App. 2014). But we

find that the evidence in this case, construed in the Estate's favor, shows that John was acting *solely*, not just *predominately*, in a private capacity.

[15] Although we have held that where some acts of the employee are authorized by his employer, the issue of whether the employee was acting within the scope of his employment becomes a question for the jury, we do not believe that the word "authorized" should be read as broadly as simply "not unauthorized." In every case upholding the vicarious liability of an employer, there is some minimal nexus between the employee's work and the facts of the case. *See, e.g., Stropes*, 547 N.E.2d at 245 (employer instructed, and therefore authorized, employee to bathe resident of facility, which then shifted into sexual assault); *Southport Little League v. Vaughan*, 734 N.E.2d 261, 268 (Ind. Ct. App. 2000) (employer instructed, and therefore authorized, equipment manager to fit boys with uniforms, which then shifted into that manager committing molestations); *Gomez v. Adams*, 462 N.E.2d 212, 224-25 (Ind. Ct. App. 1984) (employer instructed, and therefore authorized, private security officer to maintain order in apartment complex, which then shifted into that officer committing several crimes). In the present case, we cannot point to any instruction given by the Sheriff to John that placed him into the situation that resulted in Christine's death. Indeed, we cannot find a single act or omission committed by John that he would not have done as a member of an entirely different profession. Because there is not even a slight nexus between his job as a sheriff's deputy and his actions in his own bedroom, none of his acts were "authorized" for

purposes of the doctrine of respondeat superior, and the question of his scope of employment should have never gone before the jury.

[16] If we were to accept the Estate's argument, we can find little reason that any police department would not be found vicariously liable for every act of its officers and deputies. Every police department has an interest in its employees advancing its goal of crime prevention. Because every officer is at all times authorized to reduce the level of crime, whether on or off duty, the Estate's position would turn every crime or tort committed by an officer into a question of fact for a jury. Perhaps there would be some limit based on the officer's jurisdiction, as in *Moore*, 706 N.E.2d at 604, where we found that the city could not be held liable for the actions of an officer committed outside of the city. But that would not be a viable limit for county deputies, whose jurisdiction extends over hundreds of square miles. It certainly would not be a viable limit for State Troopers, whose jurisdiction extends over the entire state.

[17] In short, because John's actions took place in the most private and intimate of circumstances, during an argument between two spouses, while he was off duty, in an encounter to which the Sheriff had absolutely no connection, as a matter of law the Sheriff cannot be held vicariously liable for his crimes.

[18] The judgment of the trial court is reversed and remanded with instructions to grant the Sheriff's motion to correct error consistent with this opinion.

Najam, J., and Pyle, J., concur.