# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 13 2017, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E. Morgan
Elise C.L. Bowling
Office of Corporation Counsel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Michael D. Head
Reichel Stohry L.L.P.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

City of Indianapolis,

*Appellant-Defendant,*

v.

Rosalynn West,

*Appellee-Plaintiff*

July 13, 2017

Court of Appeals Case No.
49A02-1612-CT-2898

Appeal from the Marion Superior Court

The Honorable Thomas J. Carroll, Judge

Trial Court Cause No.
49D06-0803-CT-10163

**Mathias, Judge.**

[1] The Marion Superior Court ruled that genuine issues of material fact existed as to whether a police detective acted within the scope of her employment when she forwarded an e-mail concerning the internal governance of her church to

other church members using her work-issued computer and e-mail address while on duty. From that ruling, her employer now takes this interlocutory appeal, claiming it was entitled to judgment as a matter of law.

We reverse.

## Facts and Procedural Posture

In October 2007, Rosalynn West ("West"), Betty Wadlington ("Wadlington"), and Jeanette Larkins ("Larkins") were all members of Mt. Olive Missionary Baptist Church in Indianapolis, Indiana. West headed the church's Christian Education Committee and served on its Pastoral Search Committee.

Wadlington thought West unsuited for those positions and sent a letter to the church's governing bodies urging them to remove her:

> I hesitated to write this at first, and then something in my spirit would not let it rest. I need to reveal this information to you, so that, hopefully, you will make spirit-led decisions in this regard.
>
> . . . It may or may not surprise you to know that Sis. West's behavior has been the subject of much discussion among the membership lately, and everyone has the same opinion - SHE NEEDS TO BE DEALT WITH!!!
>
> This is a woman who is the head of <u>Christian</u> Education and on the Pastoral Search Committee - yet her actions/words have been anything but Christ-like. . . .
>
> I used to be on the Christian Education Committee - I respectfully stopped attending the meetings after I witnessed Sis. West <u>SCREAM</u> at an elder member of our church who in no way deserved such a level of disrespect. . . .

Sis. West made it no secret that she "could not stand" [a former interim pastor]. She provoked him in to the behavior he displayed. . . . She had to know that if she "attacked" his child and wife that he was going to respond - which was exactly what she was hoping for. . . .

Removing Sis. West from chairmanship of the CHRISTIAN Education Committee is a change that needs to be made. Removing her from the pastoral search committee is a change that needs to be made. . . .

You don't need to respond to me and this memo - but you do need to respond to the actions of Sis. West - and do it soon or I believe our church will live to regret it.

Sincerely, . . . .

Appellant's App. pp. 23-24 (*sic passim*). On Sunday, October 14, 2007, Wadlington e-mailed a copy of her letter to Larkins and two other church members so that "if [they] hear[d] about this situation again - [they'd] know what's going down." *Id.* at 22.

[5] At the time, Larkins was a detective employed by the Indianapolis Metropolitan Police Department ("IMPD") and the City of Indianapolis ("the City") to investigate sex crimes, specifically sexual assault on victims at least fourteen years old. With IMPD[1] approval, she had also occasionally worked as a part-time security guard for the church since 1996. Wadlington's e-mail was

---

[1] Before City and county law enforcement were consolidated in 2007, creating IMPD, Larkins was employed in the same position by the now-defunct Marion County Sheriff's Department. For the sake of simplicity, we refer only to IMPD.

sent to Larkins's "indygov.org" e-mail address, a City-issued address for City business, which Larkins could access only from her City-issued desktop computer at her office. Larkins, therefore, did not receive Wadlington's e-mail until she went to work the next day, Monday, October 15, 2007. That evening, Larkins read the e-mail and forwarded it without comment to eighty-eight church members and one former member. None were City employees.

[6] In February 2008, West sued Larkins, Wadlington, and the City for defamation and invasion of privacy. By early 2015, Larkins and Wadlington had declared bankruptcy and were dismissed from the suit in February and March of that year, respectively. The City as the sole remaining defendant moved for summary judgment on April 19, 2016. The trial court denied the City's motion on October 26, 2016, without entering findings or conclusions. The trial court certified its ruling for interlocutory appeal on November 28, 2016. We accepted the appeal on January 27, 2017.

## Standard of Review

[7] Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015). The movant's burden is to show that its designated evidence, with all conflicts, doubts, and reasonable inferences resolved in the nonmovant's favor, affirmatively negates the nonmovant's claim. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The burden then shifts to the nonmovant to show an issue of fact affecting the outcome of the case that requires resolution by the fact-finder.

*Id.* We review the trial court's ruling de novo as a question of law, taking care that the nonmovant is not improperly denied her day in court. *Id.* We may affirm denial of summary judgment on any theory or basis found in the designated evidence. *Chang v. Purdue Univ.*, 985 N.E.2d 35, 45 (Ind. Ct. App. 2013), *trans. denied*.

# Discussion and Decision

West seeks to hold the City vicariously liable for the torts of its employee Larkins under the doctrine of respondeat superior. The City responds that Larkins's conduct in forwarding Wadlington's e-mail was not done within the scope of her employment with the City as a matter of law, and that it is therefore entitled to judgment. West replies that whether Larkins was acting within the scope of her employment is a question of fact for the jury. We agree with the City.

## I. *The Law of Respondeat Superior and Scope of Employment*

Under the doctrine of respondeat superior, an employer may be held vicariously liable for the wrongful acts of its employee done within the scope of her employment. *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008). Generally, if the employee's act was authorized by the employer, "incidental to the conduct authorized [by the employer,] or . . . to an appreciable extent[] further[ed] the employer's business[,]" it was done within the scope of employment. *Id.* (citations omitted). If the act was instead part of "an independent course of conduct not intended by the employee to serve any purpose of the employer[,]"

it was outside the scope of employment. *Id.* at 284 (quotations and citation omitted).

[10] However, many egregious or otherwise criminal acts, and many intentional torts generally, can hardly be said to be "authorized" by an employer or to be "intended . . . to serve [a] purpose of the employer." *Id.* at 283-84. Nevertheless, that fact is not, in itself, a defense to vicarious liability. *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 105 (Ind. 1997) (drunk driving); *Stropes by Taylor v. Heritage House Childrens Cent., Inc.*, 547 N.E.2d 244 (Ind. 1989) (sexual assault); *Southport Little League v. Vaughan*, 734 N.E.2d 261 (Ind. Ct. App. 2000) (child molesting), *trans. denied*; *Gomez v. Adams*, 462 N.E.2d 212 (Ind. Ct. App. 1984) (conversion). The employer is still liable for the natural and predictable consequences of the conduct of its business by its agents.[2]

[11] For vicarious liability to attach in such cases, there must be "some minimal nexus between the employee's work and the facts of the case." *Harrison Cnty.*

---

[2] Not to say foreseeable consequences. "[W]hat is reasonably foreseeable in this context of *respondeat superior* is quite a different thing from the foreseeably unreasonable risk of harm that spells negligence. The foresight that should impel the prudent man to take precautions is not the same measure as that by which he should perceive *the harm likely to flow from his long-run activity* in spite of all reasonable precautions on his own part." *Ira S. Bushey & Sons, Inc. v. United States*, 398 F.2d 167, 171 (2d Cir. 1968) (Friendly, J.) (original alterations, quotations omitted; emphasis added). The necessity of this latter foresight, and the imposition of liability on the employer in such cases generally, flows not from traditional concepts of fault or efficient cost allocation, but from "a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be *characteristic of its activities*." *Id.* (emphasis added); *see also Carr v. Wm. C. Crowell Co.*, 171 P.2d 5, 7 (Cal. 1946) (Traynor, J.) ("The employer's responsibility for the tortious conduct of his employee extends far beyond his actual or possible control over the conduct of the servant. It rests on the broader ground that every man who prefers to manage his affairs through others remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others[] . . . ." (original quotations omitted)).

*Sheriff's Dep't v. Ayers*, 70 N.E.3d 414, 418 (Ind. Ct. App. 2017), *trans. denied*. "[T]he focus must be on how the employment relates to the context in which the commission of the wrongful act arose," *Barnett*, 889 N.E.2d at 285 (quoting *Stropes*, 547 N.E.2d at 249), and on the degree to which the employee's acts were associated with her employment duties. *Id.* (discussing *Stropes*, 547 N.E.2d at 250); *Gomez*, 464 N.E.2d at 223 (no vicarious liability for acts "outside the line of [the servant's] duty and not connected with his master's business"). "The critical inquiry is not whether an employee violates his employer's rules[,]" but whether the "employee's act originated in activities so closely associated with the employment relationship as to fall within its scope." *Warner Trucking*, 686 N.E.2d at 105. If so, the act "further[s] [the] employer's business" and may subject the employer to vicarious liability. *Barnett*, 889 N.E.2d at 285 (discussing *Stropes*, 547 N.E.2d at 249-50).

[12] In this inquiry, we ask how closely the acts complained of resemble acts the employee was employed to do, and whether the latter tend naturally or predictably to "melt[]" or "ripen[]" into the former, *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 608 (Ind. Ct. App. 1999), *trans. denied*, such that the employer may properly be charged with the resulting injury as characteristic of conducting its business through others. Where, for example, a children's baseball league engaged an equipment manager to "fit[] youths with baseball uniforms behind locked doors in an equipment shed" as the "only adult present" and to "assist the youths in dressing and undressing," the manager's tortious acts of leering at and fondling the children closely resembled the acts of

supervision and fitting he was engaged to perform, and under the circumstances it was predictable that the latter will in some instances melt or ripen into the former. *Vaughan*, 734 N.E. at 266, 271 (affirming denial of defendant's motions for summary judgment and for judgment on the evidence).[3]

[13] Importantly, especially in the case before us, whether an act was within the scope of employment may be decided as a matter of law. In *Konkle v. Henson*, 672 N.E.2d 450 (Ind. Ct. App. 1996), we opined that,

> [i]f some of the employee's actions were authorized [but others were unauthorized], the question of whether the unauthorized acts were within the scope of employment is one for the jury. However, if none of the employee's acts were authorized, there is no respondeat superior liability and summary judgment is proper.

*Id.* at 457 (citations omitted). *Barnett* rejected this rule because it improperly focuses on the employer's permission rather than on the association between the employee's wrongful acts and the acts the employee is employed to do, the question at the heart of *Stropes*. *See Barnett*, 889 N.E.2d at 285. The question is not whether an unauthorized act followed an authorized act or vice versa, but

---

[3] Further, where a home for severely handicapped children employs a nurse's aide to "minister to residents in their beds, remove their clothing, and touch and handle their bodies," the analysis and result are the same with respect to the aide's sexual assault of a fourteen-year-old resident lacking "the verbal or motor skills necessary to perform . . . even the simplest tasks . . . ." *Stropes*, 547 N.E.2d at 245 (reversing grant of defendant's motion for summary judgment). They are the same again where a private security company employs a guard to "request, receive[,] and retain personal identification while investigating disturbances or in effecting arrests" and to "retain confiscated personal effects until they were turned over" to supervisors with respect to the guard's conversion of property seized from an arrestee. *Gomez*, 462 N.E.2d at 223 (remanding for trial on employer's vicarious liability).

whether a reasonable fact-finder could conclude that the "employee's act originated in activities so closely associated with the employment relationship as to fall within its scope." *Warner Trucking*, 686 N.E.2d at 105.

Judgment for the employer as a matter of law is appropriate where "there is not even a slight nexus" between the employee's wrongful acts and her employment duties. *Ayers*, 70 N.E.3d at 418. It has long been settled that mere use of the employer's facilities to commit a wrongful act, *Louisville & Nashville R.R. Co. v. Gillen*, 166 Ind. 321, 76 N.E. 1058, 1059 (1906) (sustaining defendant's demurrer to complaint), *cited in Gomez*, 462 N.E.2d at 213, or mere access to a victim afforded by employment, *Eagle Mach. Co., Inc. v. Am. Dist. Tel. Co.*, 127 Ind. App. 403, 140 N.E.2d 756 (1957) (affirming directed verdict for defendant), *discussed in Gomez*, 462 N.E.2d at 224-25, do not without more present a sufficient nexus to merit decision by the fact-finder.

## II. *Larkins Did Not Act Within the Scope of Her Employment As a Matter of Law*

In this case, it is undisputed that Larkins was not authorized by her employer to send personal e-mails from her City e-mail address and City computer while on duty, nor to commit defamation by such means. Appellant's App. pp. 126, 128 (IMPD general order on employee computer use). However, that is not the end of the inquiry. The question, rather, is whether a reasonable jury could find that Larkins's act of forwarding Wadlington's e-mail was sufficiently associated with the acts Larkins was employed to perform as a sex-crimes detective, such

that the City may properly be charged with the resulting injury as characteristic of employing sex-crimes detectives. We conclude it could not.

[16] The City's designated evidence revealed that in October 2007, Larkins's employment duties were to investigate incidents of sexual assault on victims age fourteen or older. *Id.* at 120. She would investigate cases as assigned by a sergeant or as necessary when called into the field. *Id.* Cases would originate from the reports of victims or uniformed officers at the scene, or from health care professionals, school staff, or the Department of Child Services. *Id.* Larkins worked from her office unless she was called into the field. *Id.* In the field, Larkins would seek out and interview witnesses, seek out and interview victims, canvass neighborhoods for information, and attempt to identify unknown persons. *Id.* At her office, Larkins's use of her City-issued computer was a "crucial function" of her job. *Id.* at 122.

[17] Larkins's act of forwarding Wadlington's e-mail about West's role in the governance of their church did not appear to resemble or be associated in any degree with any Larkins was employed to perform as an IMPD sex-crimes detective in that it did not appear to be part of or incidental to an investigation into sexual assault. Larkins understood the recipients of her e-mail all to belong to a "women's ministry" at the church, *id.* at 102, called "Women of Faith." *Id.* at 131. Larkins never showed Wadlington's e-mail to anyone at her office or discussed it with anyone there. *Id.* at 101. Nothing in Wadlington's e-mail was related to or suggested sexual assault on the part of any church member or

against any church member. No church member was suggested to be under investigation for sexual assault or a witness in a sexual-assault investigation.

[18] It is true that Larkins's use of her City-issued computer and e-mail address was central to the performance of her employment duties. However, the mere use of her employer's facilities did not bring her act within the scope of her employment. *See Doe v. Lafayette Sch. Corp.*, 846 N.E.2d 691, 702 (Ind. Ct. App. 2006) (use of employer's computer and e-mail account), *abrogated in nonrelevant part by State Farm Mut. Auto. Ins. Co. v. Jakupko*, 881 N.E.2d 654 (Ind. 2008);[4] *Gomez*, 462 N.E.2d at 213 (generally). The question is not whether the employer's facilities were used, but what the facilities were used *for*, and whether such use was sufficiently associated with the employee's ordinary employment use. As the City suggests, "Modern offices could not function without [e-mail]. [To hold] employers vicariously liable for every e-mail their employees send from a work e-mail account — whether job-related or not — would risk an avalanche of litigation against employers without" serving the policies underlying vicarious liability. Appellant's Br. at 14-15. We agree.

[19] The City's designations sufficiently discharged its initial burden as a summary judgment movant by showing that Larkins's forwarding Wadlington's e-mail

---

[4] In *Doe*, we held a school teacher's sex acts with a minor former student were not within the scope of employment as a matter of law where the teacher solicited the student's baby-sitting services by means of a school-owned computer and school-issued e-mail address and then engaged in personal communication with the student for over a year before doing the acts complained of, because such conduct was far removed from the teacher's employment duty to communicate with current students about school work. 846 N.E.2d at 702 (affirming grant of defendant's motion for summary judgment).

simply had nothing to do with her job as a sex-crimes detective. The burden then shifted to West to show a genuine dispute of material fact precluding judgment for the City. She did not.

[20] Below, West argued that Larkins's part-time employment with the church as an IMPD-authorized security guard brought her act within the scope of employment with the City, and that it was genuinely disputed whether Larkins still worked as a security guard for the church in October 2007. West has abandoned this position on appeal, arguing instead that a genuine dispute existed as to whether Larkin forwarded Wadlington's e-mail "as a purely personal act . . . or, at least in part, as a police officer (intending to warn the recipients of [West's] alleged criminal conduct so that they could be alert and stay out of perceived danger) in furtherance of her oath to protect and serve." Appellee's Br. at 9. By "alleged criminal conduct," *id.*, West means the allegations in Wadlington's e-mail that West "scream[ed]" at a church member and "'attacked' [the] child and wife" of the church's former interim pastor. Appellant's App. p. 23 (original scare quotes). Neither argument is sufficient to resist summary judgment.

[21] As an initial matter, neither party, below or on appeal, presented cogent argument as to whether the acts of an IMPD officer while moonlighting as a private security guard may give rise to vicarious liability for the City.[5] We

---

[5] The City dismisses this possibility in its opening brief on appeal in a footnote without citation. Appellant's Br. at 13 n.4; *but see generally Farr v. Laidig Concrete, Inc.*, 810 N.E.2d 1104, 1106-07 (Ind. Ct. App. 2004), *trans.*

therefore assume for summary judgment purposes that Larkins's acts within the scope of her employment as an IMPD-authorized church security guard could give rise to such liability as a matter of law.

[22] We have held before that a law enforcement officer's abstract duties to enforce the law and protect the public — stated at the highest level of generality, outside a concrete employment context, and unconnected to particular acts performed in the course of employment — could not sustain vicarious liability for the public employer. *Ayers*, 70 N.E.3d at 418 (reversing denial of defendant's motion to correct error after judgment on jury verdict where sheriff's deputy recklessly allowed spouse to commit suicide with deputy's department-issued firearm); *see also Moore*, 706 N.E.2d at 608 (reversing denial of defendant's motion for judgment on the evidence where police officer committed battery on driver following traffic stop and it appeared officer not employed to "make traffic stops outside the [c]ity's corporate boundaries, out-of-uniform, or in unmarked police car"). Thus, here, to the extent that Larkins's forwarding Wadlington's e-mail was outside the scope of her particularized duties as a sex-

---

*denied* (discussing vicarious liability for borrowed servants); *Johnson v. Motors Dispatch, Inc.*, 172 IndApp. 285, 360 N.E.2d 224, 292 (1977) (discussing vicarious liability for dual masters). Though no court of this state appears recently to have confronted the question, this court has held before that an off-duty police officer working for a private car auction acted within the scope of his *public* employment when chasing a car thief from the auction. *Gentry v. Hockett*, 498 N.E.2d 405, 406 (Ind. Ct. App. 1986) (citing *Sports, Inc. v. Gilbert*, 431 N.E.2d 534, 539 (Ind. Ct. App. 1982) ("The employer does not 'rent' the state's police power . . . ."); *Tapp v. State*, 406 N.E.2d 296, 302 (Ind. Ct. App. 1980) ("[I]t is the nature of the acts performed [that controls] . . . .")). Courts of our sister states have reached opposite conclusions. *Compare, e.g., White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713 (Tenn. 2000) (vicarious liability may lie for public employer) *with Melendez v. City of Los Angeles*, 73 Cal. Rptr. 2d 469 (Cal. Ct. App. 1998) (no vicarious liability will lie for public employer). It is clear at least that the City would not be entitled to summary judgment on these grounds without further factual development and argument.

crimes detective as discussed above, West cannot resist summary judgment by resorting to IMPD's generalized interest in public safety or Larkins's purported generalized duty to warn the public of any and every instance of "alleged criminal conduct . . . ." Appellee's Br. at 9.

[23] Nor can West successfully rely on Larkins's duties as a part-time security guard for the church. West's own designations reveal that Larkins's duties as such were to protect "the security of the church" by patrolling the church parking lot to prevent car break-ins and by guarding the collections after church services until deposited by a church official. Appellant's App. p. 166. In this capacity, Larkins worked Sundays and Wednesdays. *Id.* at 165. Larkins stated, without contradiction by other evidence, that she never worked for the church while on duty with IMPD. *Id.* at 166.

[24] Nothing in Wadlington's e-mail had any connection with Larkins's duties as a church security guard. West's designations reveal that Larkins's duties were to protect church property and church members' property during church services, not continuously to keep the peace between church members, warn church members of another member's potentially or arguably hostile conduct, or initiate investigations into such conduct. Nothing in West's designations suggests that Larkins was expected to or did perform any work for the church outside the church on days other than Sundays and Wednesdays, or while she was at her office and on-duty with IMPD.

West essentially seeks a trial on Larkins's intent or motivation at the time she forwarded Wadlington's e-mail. Our supreme court has questioned the relevance of an employee's purely subjective motivation in such cases. *See Stropes*, 547 N.E.2d at 249 (quoting with approval *Marston v. Minneapolis Clinic of Psychiatry*, 329 N.W.2d 306, 311 (Minn. 1982) ("[T]he employee's motivation should not be a consideration[.]")). Even assuming an employee's motivation could furnish freestanding grounds for trial in the absence of any nexus or association of the employee's acts with the employee's duties, there is simply no evidence or rational inference that Larkins had the motivation ascribed to her by West: "to warn the recipients [of Larkins's e-mail] of [West's] alleged criminal conduct so that they could be alert and stay out of perceived danger[] in furtherance of her oath to protect and serve." Appellant's Br. at 9.

There is no reasonable inference that Wadlington's allegation that West "scream[ed]" at a church member was an allegation of criminal conduct. Appellant's App. p. 23. Also, Larkins never witnessed West "screaming" at anyone. *Id.* at 167. Nor had Larkins witnessed West "attacking" the former interim pastor's child and wife. *Id.* at 169. The latter allegation "was just one of those things that was buzzing around the church." *Id.* It is thus difficult to infer on Larkins's part a need or motivation to warn the church membership of an incident she thought was already widely known. Larkins never tried to look into the allegations more closely or to find out more details. *Id.* at 170. Larkins never spoke with anyone about the allegations or undertook to discover whether they were true. *Id.* at 171. In fact, "[Larkins] didn't undertake

anything. People would send [her] e-mails in reference to the church . . . , whether it was encouraging people or relating things that were going on at the church[,] and [Larkins] forwarded the e-mails to the group[,]" *id.*, the women's ministry at the church called "Women of Faith." *Id.* at 131. This casualness, incuriosity, and total lack of urgency on Larkins's part with respect to the incidents described in Wadlington's e-mail give rise to no reasonable inference that Larkins was motivated by a desire "to warn the recipients [of Larkins's e-mail] of [West's] alleged criminal conduct so that they could be alert and stay out of perceived danger[] in furtherance of her oath to protect and serve." Appellant's Br. at 9.

## Conclusion

The City was entitled to judgment as a matter of law because no reasonable jury could conclude that Larkins's forwarding Wadlington's e-mail was sufficiently associated with Larkins's employment duties as a sex-crimes detective to come within the scope of her employment with the City. The trial court therefore erred in denying the City's April 19, 2016, motion for summary judgment. We reverse that denial and remand with instructions to grant the City's motion.

Reversed and remanded for proceedings consistent with this opinion.

Kirsch, J., and Altice, J., concur.