

FILED

Apr 25 2019, 5:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Jeffrey S. McQuary
Brown Tompkins Lory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kailee M. Smith and Jeffrey S. McQuary, | April 25, 2019 |
| *Appellant-Plaintiffs,* | Court of Appeals Case No. 18A-MI-1593 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, | The Honorable Heather A. Welch, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 49D01-1706-MI-23427 |

**May, Judge.**

[1]     Kailee M. Smith[1] and Jeffrey S. McQuary (collectively, "Appellants") appeal the trial court's grant of summary judgment in favor of the State on an indemnification claim Kailee and McQuary filed against the State ("Indemnification Claim"). Appellants present three issues for our consideration, which we restate as:

> 1. Whether the trial court erred when it found the dismissal of Kailee's state law action in Hancock County ("State Claim") resulted in collateral estoppel that prohibited Appellants from arguing Officer Scott Johnson was acting within the scope of his employment as a DNR Conservation Officer when he took the actions alleged herein;
>
> 2. Whether the trial court erred when it found Appellants did not designate sufficient evidence to demonstrate Officer Johnson acted within his scope of employment during the relevant events; and
>
> 3. Whether the trial court erred when it concluded there were not issues of material fact regarding whether Officer Johnson's actions were not noncriminal.

We reverse and remand.

---

[1] Kailee is also referenced as "Kailee Leonard" in portions of the record, as that is her married name, and "Kailee Smith" in other portions of the record. We will refer to her as "Kailee" to avoid confusion.

# Facts and Procedural History[2]

[2] On December 18, 2012, Kailee struck and killed Johnson's dog. Kailee stopped her car, examined the damage, determined the dog was dead, and drove to her fiancé's house nearby. Kailee and her fiancé drove back to Johnson's house, knocked on his door, and told Johnson what happened. Kailee called police to report the accident. Police responded a few hours later, investigated, and wrote a report on the incident.

[3] Sometime in February 2013, Johnson visited the office of the Hancock County Prosecutor, which he regularly visited in the course of his duties as a Conservation Officer for the Department of Natural Resources of Indiana. He visited the office in uniform. At that time, Johnson spoke to the Chief Deputy Prosecutor of Hancock County, Tammi Phillips, and told her that Kailee had struck and killed his dog. He then indicated he thought Kailee might have committed Class B misdemeanor failure to stop after an accident causing property damages other than to a vehicle. Phillips told Johnson to speak with Stephen Banks, an investigator with the Hancock County Prosecutor's Office, to prepare a probable cause affidavit.

[4] On June 28, 2013, the Hancock County Prosecutor's Office charged Kailee with Class B misdemeanor failure to stop after an accident causing property

---

[2] We held oral argument on March 1, 2019, at the ISBA Women's Bench Bar Retreat in Culver Cove, Indiana. We thank counsel for their excellent advocacy.

damage other than to a vehicle. The charges were dismissed on May 29, 2014, after Johnson admitted in a deposition that Kailee had informed him of the incident on the night of the accident.

[5] On October 15, 2014, Kailee filed a tort claim under Indiana law ("State Claim") in Hancock County Circuit Court, in which she alleged, under Indiana law:

> 18. Johnson's actions in procuring [Kailee's] prosecution constitute false arrest and malicious prosecution, negligence and intentional infliction of emotional distress under Indiana law.
>
> 19. The State of Indiana was negligent in its supervision of Johnson by permitting him to use his police authority to prosecute a groundless case.
>
> 20. The State of Indiana is liable for Johnson's acts and omissions under the principle of *respondeat superior*.

(Appellee's App. Vol. II at 77.) Kailee alleged that "[w]hen procuring the prosecution of [Kailee,] Johnson acted within the scope of his employment by the Indiana Department of Natural Resources." (*Id.*)

[6] On October 16, 2014, Kailee filed a §1983 claim in the U.S. District Court in the Southern District of Indiana ("Federal Claim") alleging, "Johnson's actions in procuring [Kailee's] prosecution constitute false arrest and malicious prosecution in violation of the Fourth Amendment." (*Id.* at 96.) Unlike in the State Claim, Kailee did not allege in the Federal Claim that Johnson acted

within the course of his employment; instead she alleged, "When procuring the prosecution of [Kailee,] Johnson acted under the color of Indiana law." (*Id*.)

[7] On December 10, 2014, the State filed a motion to dismiss the State Claim, asserting the claim was barred by the Indiana Tort Claims Act and the State could not be held liable under the doctrine of *respondeat superior* for Officer Johnson's actions because "Johnson was reporting the incident as a victim of a crime and not as a law enforcement officer." (Appellee's App. Vol. II at 86.) In addition, the State argued that even if Officer Johnson's actions were taken within the scope of his employment, "All of [Kailee's] alleged damages result from the initiation of a judicial proceeding – that is, a criminal proceeding pertaining to a citation for leaving the scene of an accident." (*Id*.) Therefore, the State claimed, because Johnson gave a verbal statement to prompt the investigation but did not participate in the investigation, he, and thus the State, could not be held liable for the damages Kailee alleged. (*Id*.) The trial court granted the State's motion to dismiss Kailee's State Claim with prejudice the same day. (*Id*. at 90.)

[8] The State initially entered an appearance on Officer Johnson's behalf in the Federal Claim. However, on March 12, 2015, the State withdrew that representation because "Mr. Johnson has consistently stated that he was acting as a private citizen at the time he spoke with the investigator at the prosecutor's office, and after investigation of the facts, the Attorney General's office has found no evidence to show otherwise." (*Id*. at 99.) Thus, "the Attorney

General [was] precluded by law from representing him." (*Id.*) The District Court granted the State's motion to withdraw.

[9] On May 11, 2015, Officer Johnson filed a *pro se* motion to dismiss the Federal Claim because Kailee's claims involved her rights under the United States Constitution and "Johnson was never in a position during the course of Steve Banks['], Hancock County Prosecutor[']s investigator, investigation other than that of a private citizen providing a verbal statement." (*Id.* at 116.) In addition, Officer Johnson noted the dismissal of Kailee's State Claim in support of his motion to dismiss the Federal Claim. The District Court did not rule on Officer Johnson's motion.

[10] On June 29, 2015, private counsel entered an appearance in District Court on Officer Johnson's behalf. On August 27, 2015, Officer Johnson, via counsel, filed another motion to dismiss. The District Court denied Officer Johnson's August 27 motion to dismiss on December 14, 2015. On September 27, 2016, Officer Johnson's private counsel filed a motion to withdraw, and Officer Johnson filed a motion requesting appointment of counsel. Two days later, the District Court denied both motions as moot.

[11] On November 29, 2016, the parties filed a joint stipulation of facts. The District Court held a jury trial on December 13, 2016. The jury returned a verdict in Kailee's favor, awarding her $10,000.00 in damages. The District Court subsequently awarded Kailee an additional $422.00 in costs and $52,040.00 in attorney's fees. Over the next few months, the parties attempted to work out a

payment agreement, and they discussed Officer Johnson filing an indemnification claim against the State for the payment of the judgment. In May 2017, Appellants drafted a contract by which Officer Johnson assigned his right to file an indemnification action against the State to Appellants as partial payment for the judgment against him in the Federal Claim. Officer Johnson signed the agreement in May, and Appellants signed it in August 2017.

[12] On June 13, 2017,[3] Appellants filed a complaint for damages and declaratory judgment ("Indemnification Claim"), the ruling on which is the subject of this appeal. In the complaint, Appellants gave a brief history of the Federal Claim and indicated Officer Johnson had assigned his indemnification rights to Appellants. Appellants asserted:

> 17. The State of Indiana is required to pay the judgment, costs, and attorneys['] fees assessed against Johnson pursuant to Ind. Code § 34-13-4-1.

> 18. The Court should declare the rights of McQuary, [Kailee], and the State of Indiana regarding Johnson's right to indemnification.

(*Id.* at 5.)

---

[3] The Chronological Case Summary provided in the record is a print out of the public MyCase docket, which contains this caveat at the top of the first page: "This is not the official court record. Official records of court proceeding may only be obtained directly from the court maintaining a particular record." (Appellants' App. Vol. II at 2.)

[13]     On July 31, 2017, the State filed an answer and asserted nine affirmative defenses, including: (1) the Indemnification Claim was barred by *res judicata* and issue preclusion based on the earlier dismissal of the State Claim; (2) Officer Johnson's assignment of his indemnification rights was faulty for a variety of reasons; and (3) the Indemnification Claim was barred by the Indiana Tort Claims Act. (*Id*. at 8-9.) On October 27, 2017, Appellants filed a motion for summary judgment, asserting there were no issues of material fact, Officer Johnson was acting within the scope of his employment when he falsely reported the alleged crime to the Hancock County's Prosecutor's Office, the District Court had found Officer Johnson violated Kailee's Fourth Amendment rights, and the State was required to indemnify Officer Johnson. Appellants also contended the doctrine of *res judicata* premised on the dismissal of the State Claim did not apply because Kailee did not have an opportunity to fully litigate the issues in that case and finding *res judicata* would be unfair under the circumstances.

[14]     On December 6, 2017, the trial court granted Appellants' motion for summary judgment. On December 7, 2017, the parties filed a joint motion for relief from the December 6 order, as the parties agreed the State had not been given an opportunity to respond to the Appellants' motion for summary judgment and, thus, the decision was premature. The parties asked the court to instead set deadlines for the parties based on a case management plan jointly agreed upon. The trial court granted that joint motion the same day.

On January 2, 2018, the State filed its response to Appellants' motion for summary judgment in conjunction with the State's cross-motion for summary judgment. In its cross-motion for summary judgment, the State argued there existed issues of material fact and Appellants' Indemnification Claim was barred by "claim preclusion/collateral estoppel" based on the dismissal of the State Claim. (*Id.* at 71-2.) Appellants filed their response on January 26, and the State filed a reply on February 12.

On May 1, 2018, the trial court held a hearing on the competing motions for summary judgment. On June 12, 2018, the trial court issued an order granting the State's motion for summary judgment, denying Appellants' motion for summary judgment, and dismissing the Indemnification Claim with prejudice. The trial court concluded, in relevant part:

> 35. Here, the State Claim, which alleged that Johnson was acting within the scope of his employment, was dismissed. [Kailee] never filed a Motion to Correct Error, sought direct appeal of the dismissal or otherwise sought post-judgment relief from the Hancock County Circuit Court's order.

> 36. [Appellants] had a full and fair opportunity to litigate the State Claim, chose not to act on the dismissal, and instead, opted to proceed with the Federal Claim.

> \* \* \* \* \*

> 40. Moreover, [Appellants] are collaterally estopped from asserting that Johnson was acting within the scope of his

employment because the issue had been expressly adjudicated in favor of the State in the State Claim.

41. The State of Indiana is entitled to judgment as a matter of law.

(*Id*. at 15-6.)

# Discussion and Decision

Our standard of review for summary judgment is well-established:

> We review summary judgment *de novo*, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id*. (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id*. at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his

day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Therefore, for the trial court to properly grant summary judgment, the movants must have "made a *prima facie* showing that their designated evidence negated an element of the nonmovants' claims, and, in response, the nonmovants must have failed to designate evidence to establish a genuine issue of material fact." *Cox v. Mayerstein-Burnell Co., Inc.*, 19 N.E.3d 799, 804 (Ind. Ct. App. 2014). We will affirm a trial court's decision on summary judgment if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *United Rural Elec. Membership Corp. v. Ind. Mich. Power Co.*, 648 N.E.2d 1194, 1196 (Ind. Ct. App. 1995), *trans. denied*. Additionally,

> [o]ur summary judgment policies aim to protect a party's day in court. While federal practice permits the moving party to show merely that the party carrying the burden of proof lacks evidence on a necessary element, we impose a more onerous burden—to affirmatively negate an opponent's claim. That permits summary judgment to "be precluded by as little as a non-movant's 'mere designation of a self-serving affidavit.'" Summary judgment is not a summary trial, and it is not appropriate just because the non-movant appears unlikely to prevail at trial. We "consciously err[ ] on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims."

*Devereux v. DiBenedetto*, 45 N.E.3d 842, 845 (Ind. 2015) (internal citations omitted).

[18]     The case before us involves a claim against the State for the payment of compensatory damages, costs, and attorney's fees awarded to Appellants under the Federal Claim by virtue of Johnson's assignment of his right to indemnification under Indiana Code section 34-13-4-1, which states, in relevant part:

> If a present or former public employee, including a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity, is or could be subject to personal civil liability for a loss occurring because of a noncriminal act or omission within the scope of the public employee's employment which violates the civil rights laws of the United States, the governmental entity (when the governmental entity defends or has the opportunity to defend the public employee) shall [. . .] pay:
>
> (1) any judgment (other than for punitive damages) of the claim or suit; or
>
> (2) any judgment for punitive damages, compromise, or settlement of the claim or suit if:
>
>> (A) the governor, in the case of a claim or suit against a state employee; or
>>
>> (B) the governing body of the political subdivision, in the case of a claim or suit against an employee of a political subdivision;
>
> determines that paying the judgment for punitive damages, compromise, or settlement is in the best interest of the governmental entity. The governmental entity shall also pay all

costs and fees incurred by or on behalf of a public employee in defense of the claim or suit.

[19] Appellants contend summary judgment in favor of the State is not appropriate because Officer Johnson was acting within the scope of his employment when he gave the information to the Hancock County Prosecutor that resulted in Kailee's false arrest. In addition, Appellants assert the trial court erred when it determined Officer Johnson's actions were "not noncriminal[,]" (Appellants' App. Vol. II at 16), because neither party designated evidence regarding that issue from which the trial court could rule on summary judgment. However, the State maintains the arguments made by Appellants in the Indemnification Claim are barred by the doctrine of collateral estoppel based on the dismissal of the State Claim.

## Collateral Estoppel

[20] As we explained in *2444 Acquisitions, LLC v. Fish*, 84 N.E.3d 1211 (Ind. Ct. App. 2017), "collateral estoppel bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit." *Id.* at 1216.

> There are three requirements for the doctrine of collateral estoppel to apply: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity [sic] of a party in the prior action.

*Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012) (internal citations omitted) (quoting *Small v. Centocor, Inc.*, 731 N.E.2d 22, 28 (Ind. Ct. App. 2000), *reh'g denied, trans. denied*), *reh'g denied*, *cert. denied* 569 U.S. 1018 (2013). The State argues Appellants are collaterally estopped from asserting that Johnson was acting within the scope of his employment when he violated Kailee's Fourth Amendment right while acting under the color of state law because the question of whether he was acting within the scope of his employment was decided when the trial court dismissed Kailee's State Claim.

### *Initial Requirements of Collateral Estoppel*

[21] Regarding the first requirement, that there be a final judgment on the merits by a court of competent jurisdiction, the State notes there is no dispute that the Hancock Circuit court is a court of competent jurisdiction. The State contends the dismissal order is a final judgment on the merits based on Indiana Trial Rule 41(B), which states, in relevant part, "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision or subdivision (e) of this rule and any dismissal not provided for in this rule, other than dismissal for lack of jurisdiction, operates as an adjudication upon the merits."

[22] Regarding the second requirement, that there be an identity of issues, the State directs us to the claims made in the State Claim and the Indemnification Claim. In her State Claim, Kailee alleged: "When procuring the prosecution of [Kailee,] Johnson acted within the scope of his employment by the Indiana Department of Natural Resources." (Appellants' App. Vol. II at 30.) In its motion to dismiss the State Claim, the State argued, in part, "Johnson's acts

cannot be interpreted to be in the scope of his employment[.]" (*Id*. at 41.) In the Indemnification Claim, Appellants alleged: "At the time of Johnson's conversation with officials at the Prosecutor's Office, he was on duty, in uniform, and performing the ordinary functions of his job as a Conservation Officer." (Appellee's App. Vol II at 3.)

[23] Regarding the third requirement, that the parties to the two actions be the same parties or privies, the State maintains it is undisputed the parties involved in both claims are the same, or, in the case of McQuary, in privity with a party in both actions. McQuary is in privity with Kailee because he represented her in the State Claim. *See Small v. Centocor, Inc.*, 731 N.E.2d 22, 28 (Ind. Ct. App. 2000) (privity "includes those who control an action, though not a party to it, and those whose interests are represented by the party to the action"), *reh'g denied, trans. denied*.

### *Additional Requirements of Collateral Estoppel*

[24] To determine if a party's claim is barred by collateral estoppel, we also consider "whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Nat'l Wine & Spirits*, 976 N.E.2d at 704 (quoting *Small*, 731 N.E.2d at 28). Appellants argue that because the trial court's order on dismissal of the State Claim does not have findings, it is unclear which issues were decided, and thus the State has not met the threshold for collateral estoppel. In *2444 Acquisitions*, we held:

> Where collateral estoppel is applicable, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. However, the former adjudication will only be conclusive as to those issues that were actually litigated and determined therein. Collateral estoppel does not extend to matters that were not expressly adjudicated and can be inferred only by argument.

*2444 Acquisitions*, 84 N.E.3d at 1216 (internal citations omitted).

[25] Kailee's State Claim asserted multiple issues. The State requested dismissal under the Indiana Tort Claims Act and because Johnson had not been acting within the scope of his employment. The trial court dismissed the State Claim in an order that contained no findings or conclusions. Thus, the issue of whether Officer Johnson was acting within the scope of his employment was not expressly adjudicated in the State Claim.

[26] Further, it would be unfair to preclude Appellants from arguing Officer Johnson was acting within the scope of his employment when he told the Hancock County Prosecutor that Kailee had left the scene of an accident, because that was not adjudicated as part of the Federal Claim. *See Robinett v. City of Indianapolis*, 894 F.3d 876, 881-2 (7th Cir. 2018) (explaining the difference between a federal claim of acting "under color of state law" and a state claim of acting "within the scope of employment"). Therefore, the trial court's findings and conclusion regarding the issue of collateral estoppel were in error.

## Scope of Employment

Appellants argue the trial court erred when it determined they had not created a genuine issue of material fact regarding whether Officer Johnson was acting within the scope of his employment during the relevant incident because, under Indiana Code section 34-13-4-1, Officer Johnson must have been doing so for the State to be required to indemnify Officer Johnson, and by assignment, the Appellants. In the Indemnification Claim, the trial court found:

> 37. None of the designated materials raised a genuine issue of material fact as to whether Johnson was acting within the scope of his employment as a Conservation Officer. At best, [Appellants] have provided evidence that he was acting under the color of law as was determined in the federal claim.

(Appellants' App. Vol. II at 16.)

Appellants note they designated an affidavit from Officer Johnson in which he indicated he was "on duty, in uniform, conducting State business, and performing duties that were an ordinary part of [his] employment as a Conservation Officer." (*Id.* at 25.) Additionally, they direct us to the joint stipulation of facts from the Federal Claim in which Appellants and Officer Johnson agreed:

> 12. In February 2013, Johnson visited the office of the Hancock County Prosecutor.

> 13. Johnson was at the time of the accident, and is today, employed by the Indiana Department of Natural Resources as a Conservation Officer.

14.  Johnson regularly visits the Hancock County Prosecutor's office in the course of his duties as a Conservation Officer.

15.  Sometime in February 2013 while Johnson was performing his duties at the Prosecutor's Office, Johnson spoke to Tammi Phillips, the Chief Deputy Prosecutor, and told her about [Kailee] striking and killing [the dog].

(*Id.* at 23.)

[29]  In *Cox v. Evansville Police Department*, 107 N.E.3d 453 (Ind. 2018), our Indiana Supreme Court outlined the framework of the scope-of-employment rule:

> The scope-of-employment rule emanates from the concept of control.  *Stropes* [*ex rel. Taylor v. Heritage House Children's Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 252 (Ind. 1989), *reh'g denied*]; *see Dickson v. Waldron*, 135 Ind. 507, 516-20, 34 N.E. 506, 509-10 (1893)[, *reh'g denied*].  More specifically, it springs from the employer's control over its employees and their employment activities: the employer controls whom it hires, what employment duties it assigns, how it empowers employees to carry out those duties, and how it guards against harm arising from employment activities.  *See Barnett* [*v. Clark*, 889 N.E.2d 281, 284-5 (Ind. 2008)]; *Stropes*, 547 N.E.2d at 249-50; *Dickson*, 135 Ind. at 516-19, 34 N.E. at 509; *City of Indianapolis v. West*, 81 N.E.3d 1069, 1072-73 (Ind. Ct. App. 2017).
>
> Although scope-of-employment liability is rooted in this control, it extends beyond actual or possible control, holding employers responsible for some risks inherent in the employment context. *See Dickson*, 135 Ind. at 518, 34 N.E. at 509-10; *West*, 81 N.E.3d at 1072-73; *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 107-08 (Ind. Ct. App. 2014), *trans. denied*.  Ultimately, the scope of employment encompasses the activities that the employer delegates to

employees or authorizes employees to do, plus employees' acts that naturally or predictably arise from those activities. *See Stropes*, 547 N.E.2d at 250; *Dickson*, 135 Ind. at 518, 34 N.E. at 509; West, 81 N.E.3d at 1072-73; *cf. Tippecanoe Beverages, Inc. v. S.A. El Aguila Brewing Co.*, 833 F.2d 633, 638 (7th Cir. 1987) (applying Indiana law).

This means that the scope of employment - which determines whether the employer is liable - may include acts that the employer expressly forbids; that violate the employer's rules, orders, or instructions; that the employee commits for self-gratification or self-benefit; that breach a sacred professional duty; or that are egregious, malicious, or criminal. *See, e.g., Warner Trucking, Inc. v. Carolina Cas. Ins.*, 686 N.E.2d 102, 105 (Ind. 1997) (trucker's drunk driving); *Stropes*, 547 N.E.2d at 245, 249 (nurse aide's sexual assault of resident); *Walgreen*, 21 N.E.3d at 103, 109 (pharmacist's breach of privacy for prescription records); *Southport Little League v. Vaughan*, 734 N.E.2d 261, 266-67, 270 (Ind. Ct. App. 2000) (equipment manager's molestation of youths), *trans. denied*; *Gomez v. Adams*, 462 N.E.2d 212, 224-25 (Ind. Ct. App. 1984) (security officer's conversion of arrestee's check-cashing card).

The scope of employment extends beyond authorized acts for two key reasons. First, it is equitable to hold people responsible for some harms arising from activities that benefit them. *See Dickson*, 135 Ind. at 518, 34 N.E. at 510. When employees carry out assigned duties, those employment activities "further the employer's business" to an appreciable extent, benefiting the employer. *Barnett*, 889 N.E.2d at 283; *see also West*, 81 N.E.3d at 1072. But delegating employment activities also carries an inherent risk that those activities will naturally or predictably give rise to injurious conduct. *See Stropes*, 547 N.E.2d at 249-50; *Dickson*, 135 Ind. at 517-18, 34 N.E. at 509; *West*, 81 N.E.3d at 1072-73. When that happens, the employer is justly held accountable since the risk accompanies the employer's benefit.

*See West*, 81 N.E.3d at 1072 n.2; *Stump v. Ind. Equip. Co.*, 601 N.E.2d 398, 403 (Ind. Ct. App. 1992), [*reh'g denied,*] *trans. denied*.

Second, holding employers liable for those injurious acts helps prevent recurrence. *See Dickson*, 135 Ind. at 518, 34 N.E. at 509; *accord West ex rel. Norris v. Waymire*, 114 F.3d 646, 649 (7th Cir. 1997)[, *cert. denied* 522 U.S. 932 (1997)]; *Tippecanoe Beverages*, 833 F.2d at 638. Employers can take measures - like selecting employees carefully and instituting procedures that lessen employment dangers - to reduce the likelihood of tortious conduct. *See Dickson*, 135 Ind. at 518, 34 N.E. at 509-10; *accord Waymire*, 114 F.3d at 649; *Tippecanoe Beverages*, 833 F.2d at 638. Since employers have some control over the risk of injurious conduct flowing from employment activities, imposing liability on employers for that conduct encourages them to take preventive action. *See Dickson*, 135 Ind. at 518, 34 N.E. at 509; *accord Waymire*, 114 F.3d at 649; *Tippecanoe Beverages*, 833 F.2d at 638; *Mary M.* [*v. City of Los Angeles*], 285 Cal.Rptr. 99, 814 P.2d [1342,] 1343 (1991).

To be clear, the focus in determining the scope of employment "must be on how the employment relates to the context in which the commission of the wrongful act arose." *Barnett*, 889 N.E.2d at 285 (quoting *Stropes*, 547 N.E.2d at 249). When tortious acts are so closely associated with the employment that they arise naturally or predictably from the activities an employee was hired or authorized to do, they are within the scope of employment, making the employer liable. *West*, 81 N.E.3d at 1072-73. But tortious acts are not within the scope of employment when they flow from a course of conduct that is independent of activities that serve the employer. *Barnett*, 889 N.E.2d at 283-84.

*Id*. at 461-2.

[30] Appellants assert: "[Appellants'] designations indicate that Johnson was furthering the State's business by reporting to a prosecutor what he believed to be a crime, something that was a normal part of his job duties." (Br. of Appellant at 13.) The State contends that while Johnson was in a place wherein he would normally exercise duties within the scope of his employment and in his uniform,

> [t]he evidence supports that Johnson was not acting to further the State's interest when he falsely reported that [Kailee] had left the scene of the accident. Instead, Johnson was acting on his own behalf when he falsely reported the accident to prosecutors. This is not among his job responsibilities as a conversation [sic] officer for the Indiana Department of Natural Resources.

(Br. of Appellee at 23.) Based thereon, we conclude there exists a genuine issue of material fact regarding whether Officer Johnson's action of telling the Hancock County Prosecutor that Kailee left the scene of an accident was within the scope of Officer Johnson's employment and thus summary judgment was improper. *See Cox*, 107 N.E.3d at 461-2 (explaining that a person may be acting in the scope of his employment even if he engages in tortious conduct); *Cf. Mayerstein-Burnell Co., Inc.*, 19 N.E.3d at 804 (summary judgment appropriate when movants "made a *prima facie* showing that their designated evidence negated an element of the nonmovants' claims, and, in response, the nonmovants must have failed to designate evidence to establish a genuine issue of material fact").

# Conclusion Johnson's Act was Not Noncriminal

[31] To qualify for indemnification from the State under Indiana Code section 34-13-4-1, Johnson's act had to be noncriminal. In its order on the Indemnification Claim, the trial court found and concluded:

> 38. None of the designated materials raised a genuine issue of material fact as to whether Johnson committed a noncriminal act resulting in a loss to [Kailee].
>
> 39. Accordingly, Johnson is not entitled to indemnification by the State under Ind. Code § 34-13-4-1 as his actions were not noncriminal acts nor were they within the scope of his employment.

(Appellants' App. Vol. II at 16.) Appellants argue this finding and conclusion are in error because neither party raised the issue nor did either party designate evidence regarding the issue. Appellants note they stated in their memorandum in support of their motion for summary judgment that Johnson's "violation was non-criminal[,]" (Appellee's App. Vol. II at 19), and that the State did not respond to that assertion. We agree.

[32] Indiana Trial Rule 56(c) directs the trial court to make a decision regarding summary judgment "from the evidentiary matter designated to the court." The Rule dictates: "The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R. 56. In the case before us, neither party designated evidence

regarding whether Officer Johnson's actions were noncriminal, and therefore the trial court's grant of summary judgment in favor of the State on this issue was in error.

# Conclusion

[33] The trial court erred when it granted summary judgment in favor of the State because (1) collateral estoppel did not apply; (2) there existed a genuine issue of material fact whether Officer Johnson was acting within the scope of his employment at the time of his actions; and (3) the court could not decide summary judgment regarding whether Officer Johnson's acts were noncriminal because neither party had designated evidence on that issue. Accordingly, we reverse and remand for proceedings consistent with this opinion.

[34] Reversed and remanded.

Riley, J. concurs in result without opinion.

Robb, J. concurs.